Opinion
FROEHLICH, J.
This appeal requires interpretation of Insurance Code[1] section 11580.9, subdivision (c), which generally provides that when a loss arises in connection with the loading or unloading of a vehicle, and there are two or more policies of insurance “applicable to the same loss,” the insurance policy which covers the premises is presumed to be the primary policy, and the vehicle insurance policy is relegated to the role of excess insurer. The sole issue here is whether the trial court correctly construed section 11580.9, subdivision (c) as extending the coverage afforded by the premises policy to a party who was otherwise protected solely by the vehicle policy.
*401 Facts and Procedural Posture
The facts are undisputed. Craig Campbell was injured while unloading a truck at a job site in La Mesa, California. The owners of the property were Lincoln La Mesa, Lincoln Property Company and PBMC, Inc. (collectively PBMC), who were insured under a broad-form comprehensive general liability policy (the premises policy) issued by Aetna Casualty & Surety Company (Aetna). The owners of the truck were Charmac, Inc., and/or Manufacturer’s Mirror and Door Company (collectively Charmac), who were insured under a motor vehicle liability insurance policy (the vehicle policy) issued by Gulf Insurance Company. Campbell was not an employee of either the property owners or the vehicle owners.
Campbell sued Charmac and PBMC for the injuries he sustained. Charmac and PBMC in turn cross-complained against each other for total or partial indemnity. Charmac apparently also sued Aetna for declaratory relief. Aetna answered and cross-complained for declaratory relief against Charmac. The subject of the Charmac/Aetna declaratory relief action was whether Aetna had primary liability for Campbell’s injuries, obligating it to defend and indemnify Charmac before the vehicle insurer became obliged to pay under an “excess policy.”
The Charmac/Aetna declaratory relief action was severed from the main action. The matter was tendered to the court on stipulated facts, with both parties filing written briefs in support of their respective positions. Aetna argued that section 11580.9, subdivision (c) was inapplicable because the legislative intent of that section was to assign priorities among insurance coverages only when two or more insurance policies insured the same entity for the loss. It further argued that the section was inapplicable because Charmac was not an additional insured under Aetna’s policy. Charmac contended the section was applicable because the only predicate for its application was the existence of two policies which covered the same “loss,” and that the “loss,” Campbell’s injury, was covered by both the premises and vehicle policies.
The trial court agreed with Charmac’s position. It ruled that section 11580.9, subdivision (c) was applicable to the facts of this case; that the premises policy was therefore primary and the vehicle policy excess; and that Aetna had the obligation to defend and indemnify Charmac. This appeal followed.
Discussion
We conclude the trial court’s interpretation of section 11580.9, subdivision (c) was erroneous. Our review of section 11580.9, in light of the *402 apparent legislative intent behind the enactment and the language of the statute, convinces us subdivision (c) is only applicable when assessing priorities among insurance policies which cover the same insured for the same loss. Since Charmac was not an insured under the premises policy, there are not two policies “applicable to the same loss,” and therefore subdivision (c) is inapplicable and does not extend Aetna’s policy coverage to Charmac.
I. Standard of Review
We are governed by the well-established principle that when the facts are undisputed, and the issue is the application and interpretation of a statute, we independently review the trial court’s decision. (Zurich-American Ins. Co. v. Liberty Mut. Ins. Co. (1978) 85 Cal.App.3d 481, 487 [149 Cal.Rptr. 472].) Since the parties submitted the matter on stipulated facts, and no disputed extrinsic evidence was introduced to construe the terms of the respective insurance policies, the interpretations of the policies and the statute are questions of law subject to independent review. (Pacific Export Packers v. Chubb/Pacific Indem. Group (1976) 57 Cal.App.3d 186, 190 [129 Cal.Rptr. 86].)
II. Section 11580.9, Subdivision (c) Only Applies to Determine the Priorities of Two or More Policies Which Insure One Insured for the Same Loss
Section 11580.9, subdivision (c) was enacted to fulfill the express legislative purpose of avoiding the conflicts and court congestion created when multiple policies cover the same loss and numerous involved parties contest which insurer is responsible as the primary carrier and which as an excess carrier.[2] (§ 11580.8.) To further that purpose, section 11580.9 created a series of conclusive presumptions, their applicability being dependent upon the factual situations, declaring which insurer would be assigned as the primary carrier and which as the excess carrier. (§ 11580.9, subds. (a)-(d).)
*403 All parties agree that only section 11580.9, subdivision (c) has any potential relevance to the facts of this case. Subdivision (c) provides in pertinent part:
“Where two or more policies are applicable to the same loss arising out of the loading or unloading of a motor vehicle, and one or more of the policies is issued to the owner, tenant, or lessee of the premises on which the loading or unloading occurs, it shall be conclusively presumed that the insurance afforded by the policy covering the motor vehicle shall not be primary . . . but shall be excess over all other valid and collectible insurance applicable to the same loss; . . . and, in such event, the two or more policies shall not be construed as providing concurrent coverage, and only the insurance afforded by the policy or policies covering the premises on which the loading or unloading occurs shall be primary and the policy or policies shall cover as an additional insured with respect to the loading or unloading operations all employees of the owner, tenant, or lessee while acting in the course and scope of their employment.”
We must determine the circumstances under which the Legislature intended this section to be applicable. Charmac contends this section was intended to apply whenever there are two independent tortfeasors, one protected by a vehicle policy and the other by a premises policy, involved in a loading or an unloading accident. Aetna contends the intent of section 11580.9, subdivision (c) is limited to the assignment of policy priorities only when multiple policies are applicable to a particular insured’s liability arising from such accident.
The fundamental goal of statutory interpretation is to ascertain the Legislature’s intent in order to effectuate the purpose of the law, focusing not only on the words used but also on the objectives of the statute, the evils to be remedied, and the legislative history of the statute. (People v. Aston (1985) 39 Cal.3d 481, 489 [216 Cal.Rptr. 771, 703 P.2d 111].) Our review of the language of the statute, in light of the apparent purpose of the scheme as a whole (Bowland v. Municipal Court (1976) 18 Cal.3d 479, 489 [134 Cal.Rptr. 630, 556 P.2d 1081]), convinces us that section 11580.9, subdivision (c) has no application when two independent tortfeasors, each having its own insurance and neither being a named or an additional insured under the other’s policy, are codefendants in a tort action such as the instant case.
The apparent general purpose of section 11580.9 is to assign priorities among policies which insure a single tortfeasor. Section 11580.9, subdivision (a), for example, applies when a single vehicle involved in an accident has multiple policies which afford coverage. This would be the case, for *404 instance, where the driver involved in the accident is the named insured under one policy and is covered under another policy as a permissive user of that vehicle. Subdivision (a) assigns priorities depending on who was operating the vehicle at the time of the accident. Similarly, subdivision (b) focuses on assigning priorities among multiple policies protecting the same tortfeasor in situations involving leased vehicles, the assignations depending upon the nature of either the vehicle or the lease. Finally, section 11580.9, subdivision (d) assigns priorities among policies applicable to the same vehicle and same liability in cases not otherwise specified by subdivisions (a) through (c). Thus, it appears the statute as a whole was intended to operate when the same tortfeasor had multiple policies to which he could look for protection.
Previous courts examining section 11580.9, subdivision (c) have construed it in a manner consistent with the requirement that the multiple policies all apply to a single tortfeasor. The court in Pacific Export Packers v. Chubb/Pacific Indem. Group, supra, 57 Cal.App.3d 186, opined that the legislative intent behind subdivision (c) was to avoid the recurring controversies which arise when the driver of a vehicle is injured on the premises during loading or unloading of the vehicle and the driver sues the premises owner. In those circumstances, two policies are potentially applicable: the premises policy, because the premises owner is a named assured; and the vehicle policy covering the driver’s vehicle, because the owner’s employees unloading the vehicle would be “permissive users” of the vehicle and hence additional insureds under the vehicle policy. (Id. at p. 193.) “A suit by the driver against the owner . . . invariably raised the issue as to which policy covering the same loss was primary .... Now, section 11580.9, subdivision (c), clearly determines the respective responsibilities of the two insurers—the [premises policy] is primary, and the insurer of the [vehicle] is the excess carrier.” (Ibid.) Thus, Pacific Export Packers viewed the intended application of section 11580.9, subdivision (c) as limited to only those situations where two policies covered the same tortfeasor rather than merely the same accident.
The court in Zurich-American Ins. Co. v. Liberty Mut. Ins. Co., supra, 85 Cal.App.3d 481, although construing a different subdivision, also viewed the legislative purpose of section 11580.9 to be the resolution of conflicts among coinsurers[3] over the primacy of multiple policies indemnifying the same insured for the same accident or loss. The Zurich court stated:
*405 “Prior to 1970, the allocation of loss between coinsurers, two or more insurers affording coverage to the same loss, was made by judicial resort to the provisions of the respective policies. Often the policies contained provisions (so-called ‘other insurance’ clauses) through “which one coinsurer would attempt to avoid or minimize the amount of its liability at the expense of other coinsurers. . . . Judicial construction of these provisions was marked by inconsistency, prompting commentators and the courts alike to request legislative clarification. [Citation.] [¶] In 1970, the Legislature responded to these requests with the enactment of section 11580.9 [which] contains a series of alternative conclusive presumptions to be employed by the courts in determining the priority of coverage between coinsurers. Section 11580.9 embodies the public policy declared by the Legislature in companion section 11580.8, which is ‘to avoid so far as possible conflicts and litigation, with resulting court congestion. . . .’” (85 Cal.App.3d at p. 485.)
Charmac insists, however, that under the language of section 11580.9, subdivision (c), the only requirement for its application is that two or more polices be “applicable to the same loss.” Charmac argues that the “same loss” means the same injury to the third party, and further argues that subdivision (c) does not depend, as a predicate for its applicability, on resolving priorities among coinsurers who are obliged to indemnify the same insured. However, Charmac cites no authority in which any subdivision of section 11580.9 was ever applied outside the context of multiple policies insuring the same insured.[4]
Focusing on the specific text of section 11580.9, subdivision (c), we find that a predicate to its application is that multiple policies be “applicable to the same loss.” Where, as here, two independent tortfeasors are insured under their own policies and each is not an additional insured under the *406 other’s policy,[5] the policies simply are not applicable to the same loss. Charmac’s argument depends entirely on its interpretation of the term “same loss”: the same injury incurred by the third party. However, liability policies generally do not “apply” to losses by third parties; instead, liability policies “apply” to indemnify an insured for the insured’s legal liabilities in relation to the insured’s loss. Here, for example, the “loss” to which Aetna’s insuring agreement applies is constituted by “all sums which the insured shall become legally obligated to pay as damages . . . caused by an occurrence, . . .” The term “insured” is limited to persons or organizations “qualifying as an insured in the ‘Persons Insured’ provision.” Charmac’s vehicle policy presumably has similar application, i.e., to indemnify Charmac for any liability Charmac has to Campbell. Since the vehicle policy applies to Charmac’s loss, but Aetna’s policy does not in that it owes no obligation to indemnify noninsureds under Aetna’s policy, the two policies do not apply to the same loss, i.e., the loss of the insured.
A final reason for rejecting Charmac’s interpretation of section 11580.9, subdivision (c) is that such interpretation would make Charmac an additional insured under Aetna’s policy by operation of law. Charmac argues subdivision (c) requires, and the trial court’s judgment holds, that Aetna assume the role of primary carrier for Charmac (an otherwise noninsured party under the Aetna policy) and defend and indemnify Charmac for any liability it has to Campbell. A similar contention was roundly rejected by the Pacific Export Packers court. There the vehicle owner claimed the premises policy owed it primary coverage, holding that because both the vehicle policy and premises policy were applicable to the same injury/loss and subdivision (c) made the vehicle policy secondary, logically the premises policy was primary, making the vehicle owner an additional insured under the premises policy by operation of law. Refusing to accept this argument, the court stated: “This contention is predicated on the erroneous assumption that the [vehicle policy] is deemed to be secondarily liable under section 11580.9, subdivision (c), but as hereinabove set out, that statute cannot be invoked . . . because the two liability policies involved do not cover the same loss .... Section 11580.9, subdivision (c), does not create coverage where none exists under the terms of the policy . . . .” (Pacific Export Packers v. Chubb, supra, 57 Cal.App.3d at p. 194.) We do not believe the Legislature intended this statute, designed to assign priorities among already existing coverages, to result in the creation of new coverage.[6]
*407 Accordingly, we conclude that because there are not two policies indemnifying Charmac against Campbell’s claim, section 11580.9, subdivision (c) has no application in this case.
Disposition
The judgment of declaratory relief entered by the trial court is reversed, and the case is remanded for entry of a judgment in favor of Aetna Casualty & Surety Company.
Kremer, P. J., and Wiener, J., concurred.

All statutory references are to the Insurance Code unless otherwise specified. In that this opinion deals almost exclusively with the various subdivisions of Insurance Code section 11580.9, when a subdivision is referenced without identification of the code section, it will be a subdivision of section 11580.9.

The problems, litigation and judicial confusion engendered by the potential availability of multiple policies to protect an insured against a given liability are discussed in 8A Appleman, (1981) sections 4906-4913, pages 341-512. The problem results from the efforts by insurers to include provisions in policies dealing with losses covered not only by the policy in question but by other policies as well. The insurer, whose policy would otherwise provide complete coverage, seeks by one provision or another to limit its role to pro rata coverage with other existing policies, or to the status of an excess carrier. Such conflicting policy provisions have led to confusing and sometimes inconsistent resolutions of coverage disputes. Appleman’s discussion of the problem, we note, appears to assume that the multiple policies all apply to the same insured rather than to the same accident.

The court in Ohio Cas. Ins. Co. v. Harbor Ins. Co. (1968) 259 Cal.App.2d 207, 213 [66 Cal.Rptr. 340] explained that “[c]oinsurance exists only when the insurable interest contemplated by both policies is identical, i.e., coverage by different insurers of the same insured and the same risk.” (Italics added.)

To the contrary, two of the authorities cited by Charmac (Ross v. Canadian Indemnity Ins. Co. (1983) 142 Cal.App.3d 396 [191 Cal.Rptr. 99]; Nabisco, Inc. v. Transport Indemnity Co. (1983) 143 Cal.App.3d 831 [192 Cal.Rptr. 207]) involved discussion of the application of the provisions of subdivision (c) concerning the assignment of priorities in the context of two policies which were applicable to the same insured, i.e., the premises owner, insured under his premises policy as a named insured and under the vehicle policy as a permissive user/ additional insured. The only case providing even marginal aid to Charmac is Pacific Intermountain Express v. National Union Fire Ins. Co. (1984) 151 Cal.App.3d 777 [198 Cal.Rptr. 897]. There the court analyzed whether RLE. (the vehicle owner), who was self-insured, could force the premises policy to act as primary carrier for P.I.E., apparently on the unstated assumption that section 11580.9, subdivision (c) could apply to that situation. However, we cannot attribute any weight to the unstated assumption of Pacific Intermountain Express, for two reasons. First, the assumption is at best dictum, since the court’s analysis focused entirely on the fact that P.I.E., as a self-insurer, was not within the ambit of subdivision (c), and hence concluded subdivision (c) did not apply—a result with which we are in accord. Second, the facts are insufficient to determine whether P.I.E. might have been an additional insured under th e premises policy based on reasons other than subdivision (c).

The parties stipulated that Charmac was neither a named nor an additional insured under the Aetna policy.

The Legislature has shown itself capable of intentionally creating a class of “additional insureds.” This is demonstrated in subdivision (c) itself, which states in part:
*407 “[O]nly the insurance afforded by the policy or policies covering the premises on which the loading or unloading occurs shall be primary and the policy or policies shall cover as an additional insured with respect to the loading or unloading operations all employees of the owner, tenant, or lessee while acting [within] the course and scope of their employment.” (Italics added.) We should not ascribe, in the guise of interpretation, a legislative intent to expand the class of additional insureds beyond those expressly specified by the legislative enactment. (Cf. In re Hubbard (1964) 62 Cal.2d 119, 126-127 [41 Cal.Rptr. 393, 396 P.2d 809] [use of specific words and phrases in statute connotes intent to exclude that which is not specifically stated].)