[Nos. A056295, A057138. First Dist., Div. Five. Oct. 5, 1993.]

BLUE CROSS OF CALIFORNIA, Plaintiff and Appellant, v. GRANT JONES et al., Defendants and Respondents.

## COUNSEL

Crosby, Heafey, Roach & May, M. Reed Hunter, Stephen A. McFeely, M. Reed Hunter, Paul D. Fogel and Hector J. Chinchilla for Plaintiff and Appellant.

Ray Bourhis & Associates and Daniel U. Smith for Defendants and Respondents.

## OPINION

HANING, J.—In these consolidated appeals, plaintiff and appellant Blue Cross of California appeals a judgment confirming a private arbitration award in favor of defendants and respondents Grant and Laurie Jones in a dispute over health care benefits. Appellant contends the arbitrators acted in excess of their powers in reaching a "completely irrational" result.

### FACTS

In April 1985 respondents' two-year-old son Todd nearly drowned in the family's backyard swimming pool. As a result, he suffered severe anoxic

encephalopathy and is essentially comatose, requiring constant care. Since late 1985 his condition has remained unchanged, and he has been cared for at home.

Respondents are teachers in the Lodi Unified School District and since 1972 have been insured by appellant under identical group policies. The self-insured San Joaquin Health Care Joint Powers Authority is the provider of the insurance benefits. At the time of Todd's accident and until June 30, 1988, respondents were each covered by policies which provided a $300,000 lifetime maximum major medical benefit which included unlimited registered nursing services (hereafter, the first policies). This enabled Todd to have 16 hours per day of home nursing care through June 1988, the end of the benefit period. The first policies stated that an "[e]xpense is incurred on the date the Member receives the service or supply for which the charge is made" and that benefits are not provided for "services received after the Member's coverage ends . . . ." The first policies contained the following arbitration clause: "Any dispute between the Member and Blue Cross regarding the decision of Blue Cross must be submitted to binding arbitration if the amount in dispute exceeds the jurisdictional limits of the small claims court. . . . [¶] . . . THE ARBITRATION FINDINGS WILL BE FINAL AND BINDING."

Effective July 1, 1988, respondents were each covered by a new policy which provided a $2 million lifetime maximum benefit (hereafter, the second policies). The second policies limited home visits by a registered nurse to 100 visits per subscriber but failed to define a nursing visit. They included the same arbitration clause as the first policies. Since respondents were both subscribers, the lifetime maximum was $4 million, and Todd was entitled to 200 home nursing visits. Respondents claimed they were not told prior to agreeing to subscribe to the second policies that there would be a reduction in nursing benefits and therefore did not explore or obtain alternative coverage. As a concession, between July 1988 and June 1989 appellant agreed to provide the home nursing services available under the first policies despite the fact that the number of reimbursable nursing visits under the second policies had expired.

In September 1989 the parties agreed that respondents would participate in appellant's personal case management program, under which skilled nursing facility benefits would be converted to provide home nursing care. Such alternative benefits would be provided for the benefit year July 1989

through June 1990.[1] Under the case management plan, appellant provided 16 hours per day home nursing benefits during this period. At the end of the period appellant would have the option of providing further alternative benefits under the plan. The case management agreement stated: ". . . Blue Cross is not obligated to offer the same or similar services again either to you or to any other individual. By entering into this arrangement for alternative benefits . . . Blue Cross is not waiving its rights to provide coverage in the future in strict accordance to terms of your Benefit Agreement."

In July 1990 appellant notified respondents that the case management plan of converting unused benefits to provide Todd home nursing care did not meet the cost management program's cost-efficiency requirement, and therefore effective August 1, 1990, respondents' regular benefit plan would be in effect instead of the case management plan. A dispute then arose between the parties over the nursing benefits available under the policies, and the matter proceeded to arbitration.

In their arbitration brief, respondents argued that: (1) Under the rationale of *Fields* v. *Blue Shield of California* (1985) 163 Cal.App.3d 570 [209 Cal.Rptr. 781], their benefits vested without any restriction on home nursing care because the policy in force at the time of the accident did not restrict nursing benefits except to the extent of lifetime maximum benefits; (2) they reasonably believed that the case management plan became part of the policy and they could take advantage of it indefinitely; (3) appellant gave conflicting and inaccurate reasons for cancelling the case management plan; (4) it would be unconscionable to institutionalize Todd; (5) appellant acted in bad faith; and (6) respondents were entitled to damages including lifetime maximum benefits, their out-of-pocket expenses, attorney fees and emotional distress and punitive damages.

In its arbitration brief, appellant contended: (1) Vesting does not apply to an "expense" type of policy; (2) the alternative benefits provided under the case management plan were discretionary, and it could determine they were no longer appropriate; and (3) there was no evidence of any breach of the covenant of good faith and fair dealing.

---

[1]Personal case management is available to eligible policy holders and their families "[w]hen intensive medical care is required for a prolonged period," and particularly when "patients with unusually large outpatient expenses . . . might benefit from less costly alternatives." A case management plan is created for the particular patient and their family and "[t]he case manager arranges for the services of multiple providers and implements benefits for services not usually covered by the patient's health plan when appropriate." The case management plan is incorporated in a case management agreement executed by the policyholder and respondents.

The arbitrators awarded respondents $109,515.35 in out-of-pocket expenses plus administrative and arbitration fees and expenses, and ordered appellant to continue paying for 16 hours per day of home nursing care until Todd reaches age 18 or dies, whichever occurs first. The arbitrators also found appellant had acted in bad faith regarding the case management program and ordered it to pay $60,000 in attorney fees, but denied punitive damages and damages for emotional distress. The trial court granted respondents' motion to confirm the award and denied appellant's motion to vacate it.

## DISCUSSION

■ Private arbitration awards are fairly well insulated from judicial review—the grounds for vacation or modification are strictly limited by statute. (Code Civ. Proc., §§ 1286.2, 1286.6;[2] *Moncharsh* v. *Heily & Blase* (1992) 3 Cal.4th 1 [10 Cal.Rptr.2d 183, 832 P.2d 899].) In *Moncharsh* the Supreme Court discussed the scope of judicial review of a nonjudicial arbitration award: "[A]n arbitrator's decision is not generally reviewable for errors of fact or law, whether or not such error appears on the face of the award and causes substantial injustice to the parties." (*Id.*, at p. 6.) *Moncharsh* also reaffirmed the rule that the grounds for vacating or correcting arbitration awards are statutorily limited to those in sections 1286.2 and 1286.6.

■ *Moncharsh* reiterated that the scope of private arbitration is a matter of agreement between the parties, and the arbitrator's powers are limited by the agreement or stipulation of submission. (*Moncharsh* v. *Heily & Blase, supra,* 3 Cal.4th at p. 8.) It reasoned that finality attaches to arbitration awards because (1) there is a strong public policy in favor of arbitration as a speedy and relatively inexpensive means of resolving disputes, (2) the parties to a private arbitration either expressly or impliedly agree that the arbitrator's decision will be final and binding, and (3) an arbitrator is not constrained to decide a case based on rules of law, and instead "may decide on principles of equity and good conscience . . . ." (*Id.*, at p. 11.)

Pursuant to section 1286.2, "the court shall vacate the award if the court determines that: [¶] . . . [¶] (d) The arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted." Appellant contends the arbitrators

---

[2]Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.

exceeded their powers in this case by remaking the contract in dispute. In particular, it argues that the award requires it to provide Todd nursing benefits until he either reaches age 18 or dies, whichever occurs first, despite the fact that such a provision does not exist in any of the policies in question.

■ Whether the arbitrators exceeded their powers is a question of law that we review de novo. (*Southern Cal. Rapid Transit Dist.* v. *United Transportation Union* (1992) 5 Cal.App.4th 416, 423 [6 Cal.Rptr.2d 804].)

■ Neither the Legislature nor the courts have established a bright line between an arbitration award based upon an error of law and not open to judicial review, and one which exceeds the arbitrator's power and is thereby subject to vacation (§ 1286.2, subd. (d)) or modification (§ 1286.6, subd. (b)). However, there are at least two well-defined areas of agreement as to when arbitrators have exceeded their powers: The first is where the arbitrators decide an issue which was not before them (*Pacific Crown Distributors* v. *Brotherhood of Teamsters* (1986) 183 Cal.App.3d 1138, 1144-146 [228 Cal.Rptr. 645]; *Delta Lines, Inc.* v. *International Brotherhood of Teamsters* (1977) 66 Cal.App.3d 960, 966) [136 Cal.Rptr. 345]; and the second is in a contractual dispute, where the arbitrators are considered to have "rewritten" the agreement of the parties. (*Southern Cal. Rapid Transit Dist.* v. *United Transportation Union, supra,* 5 Cal.App.4th at p. 423; *Summit Industrial Equipment, Inc.* v. *Koll/Wells Bay Area* (1986) 186 Cal.App.3d 309, 320 [230 Cal.Rptr. 565].)

There is no suggestion in this case that the arbitrators decided an issue not before them. It is clear that they were asked to determine what health benefits were available to respondents under appellant's policies, whether appellant was guilty of bad faith in denying policy benefits, and whether respondents were entitled to damages for emotional distress and punitive damages. All these issues were addressed and resolved by the award.

■ Appellant contends, however, that in resolving the dispute over health care benefits the arbitrators exceeded their powers by rewriting the health care agreements. In this regard appellant essentially mounts two arguments: First, it claims that the unlimited nursing benefits under the first policies were not available after respondents became insured under the second policies, which contain limited nursing benefits. Second, it notes that the policies have clear maximum financial limits, and that the order to continue home nursing for Todd until he reaches the age of majority not only exceeds the nursing benefits available under the second policies, but could conceivably exceed the maximum financial limits of the policies.

■ Respondents rejoin that they had a tort claim on which they prevailed and the arbitrators were, therefore, free to fashion a remedy on

"principles of equity and good conscience . . . ." (*Moncharsh* v. *Heily & Blase, supra*, 3 Cal.4th at p. 11.) We reject this argument for the reason that in rendering their award, the arbitrators specifically segregated the tort damages from the benefits due under the policies. ▮ However, as respondents correctly emphasize, their primary contention was that appellant misrepresented the nursing benefits available to them under the second policies, and thereby induced them to purchase that coverage and forego the opportunity to obtain other health insurance. Consequently, the scope of the nursing benefits under the policies and all questions of law and fact connected therewith were issues clearly within the purview of the arbitration panel, and our review thereof is foreclosed. (*Id.*, at p. 28.)

Nevertheless, whether the nursing benefits are limited or unlimited under both policies, the available benefits were clearly and unambiguously subject to specified financial limits. It is possible that the continuation of home nursing benefits until Todd reaches the age of majority as required by the award herein could, when considered with other benefits that may accrue during that same period, exceed the financial limits of the policies. Whether this is merely an error of law or an act in excess of the arbitrators' powers is the issue before us.

▮ The interpretation of a written agreement such as an insurance policy, without resort to extraneous or parol evidence, is generally held to be a question of law. (*McGreehan* v. *California State Auto Assn.* (1991) 235 Cal.App.3d 997, 1000-1001 [1 Cal.Rptr.2d 235]; *Charmac, Inc.* v. *Aetna Casualty & Surety Co.* (1991) 233 Cal.App.3d 660, 664-665 [284 Cal.Rptr. 635].) ▮ The difficulty lies in attempting to determine when that error of law in misinterpretation, or remedy, becomes an excess of arbitral power. We conclude this is best left to a case-by-case analysis. "Generally, a decision exceeds the arbitrator's powers only if it is so utterly irrational that it amounts to an arbitrary remaking of the contract between the parties." (*Southern Cal. Rapid Transit Dist.* v. *United Transportation Union, supra*, 5 Cal.App.4th at p. 423; see also *Pacific Gas & Electric Co.* v. *Superior Court (Anacapa)* (1993) 15 Cal.App.4th 576, 592 [19 Cal.Rptr.2d 295]; *Summit Industrial Equipment, Inc.* v. *Koll/Wells Bay Area, supra*, 186 Cal.App.3d at p. 320; *Flores* v. *Barman* (1955) 130 Cal.App.2d 282, 287 [279 P.2d 81].) "The mere fact that a different construction could have been accorded the provisions concerned and a different conclusion reached does not mean that the arbitrators so misread those provisions as to empower a court to set aside the award.' " (*Jones* v. *Kvistad* (1971) 19 Cal.App.3d 836, 843 [97 Cal.Rptr. 100]; see also *Manatt, Phelps, Rothenberg & Tunney* v. *Lawrence* (1984) 151 Cal.App.3d 1165, 1171 [199 Cal.Rptr. 246].) In addition, as *Moncharsh*

made clear, arbitrators do not exceed their power by erroneously interpreting a contract. A valid claim that arbitrators have exceeded their power exists only where the arbitrators' interpretation or application of a contract is completely outside its scope.

■ In fashioning the remedy herein, the arbitrators rendered an award that requires the delivery of medical benefits without regard to the undisputed financial limits imposed by the policies, even though respondents have never contended that those limits were not in effect. We conclude the award in this form exceeds that which the arbitrators were empowered to render. Our conclusion is perhaps better demonstrated by a hypothetical example: Assume that a man who had been living alone died of heart disease shortly after taking out a $100,000 life insurance policy payable to "my wife, Martha." Two women named Martha then appear, both claiming to be the wife of the deceased and demanding the $100,000 benefits under the policy. The insurer claims the decedent falsified his application for insurance by concealing a preexisting heart condition and attempts to void the policy. The parties agree to arbitrate the dispute, and the arbitrators rule against the insurer and in favor of Martha number 1, awarding her $200,000. The validity of the policy and the determination of the correct beneficiary under these circumstances are solely for the arbitrators and not subject to judicial review. However, the award of a benefit twice that required by the policy is an act in excess of the arbitrators' power.

■ Section 1286.6, subdivision (b), permits correction of an award when the arbitrators have exceeded their powers, if such correction can be achieved without affecting the merits of the decision. In our view that can be achieved here by correcting the award to provide that the benefits, including home nursing, shall not exceed the $4 million financial cap to which respondents concede they agreed. This correction does not affect the merits of the controversy, but merely restores the clear and undisputed financial limits of the policies to which the parties agreed, and which have never been contested.

### DISPOSITION

The judgment is reversed with directions to modify it by providing that the medical benefits shall not exceed the $4 million limits of the policies.

Except as modified, the judgment is affirmed. The parties shall bear their own costs on appeal.

Peterson, P. J., and King, J., concurred.

A petition for a rehearing was denied November 2, 1993, and appellant's petition for review by the Supreme Court was denied February 3, 1994. Baxter, J., was of the opinion that the petition should be granted.