Filed 8/31/16  Marriage of Benigno CA5

## <u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of GINA MARIE and JACK BENIGNO. | F071070 |
| GINA MARIE BENIGNO,<br><br>        Appellant,<br><br>              v.<br><br>JACK BENIGNO,<br><br>        Respondent. | (Super. Ct. No. VFL204691)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tulare County.  Bret D. Hillman and Nathan D. Ide, Judges.

Watters Law Office and Joan Alison Watters for Appellant.

Herr Pedersen & Berglund, Leonard C. Herr and Ron Statler for Respondent.

-ooOoo-

In this marital dissolution proceeding, wife appeals from the judgment on reserved issues entered after an arbitration determined that certain issues had already been disposed of by a settlement agreement reached in the mediation of a related partnership dissolution action.  Wife contends the trial court should not have ordered the matter to

arbitration because neither party filed a petition to compel arbitration; additionally, the arbitrator's decision was wrong on the merits. We find no error and affirm.

### *FACTUAL AND PROCEDURAL BACKGROUND*

Wife petitioned for dissolution of the parties' marriage. In June 2006, the trial court entered a judgment of dissolution, based on a marital settlement agreement. The agreement provided each party would have a one-half interest in their business, Benigno Tree Service. Husband would receive two residences and their furnishings, and assume the corresponding obligations; wife would receive a residence, its furnishings, and a real property lot, and assume the corresponding obligations. Wife was permitted to withdraw $150,000 from a certificate of deposit (CD) account for a down payment on a residence. The parties agreed the real property would be jointly appraised. Then, the CDs, bank accounts, and other financial assets would be divided to equalize the division of property. The trial court reserved jurisdiction to divide the assets in the event of a dispute.

The parties continued to operate the business together, with husband performing field work and wife acting as bookkeeper, until 2008, when husband filed a civil action for dissolution of the partnership. On June 11, 2012, at a mediation session in the partnership dissolution action, the parties entered into a settlement of the issues in that case and at least some of the issues in the marital dissolution proceeding. The agreement awarded to each party the personal property in his or her possession; husband was to pay wife approximately $86,000 for her share of the business. Their son, Joe, was to pay wife $51,500.[1] Both parties permanently waived spousal support. The agreement also provided that the mediator would have the authority "to bindingly arbitrate any and all disputes" about the language, interpretation, enforcement, application, or performance of the agreement.

---

[1]    Joe apparently was a party to a cross-complaint in the partnership dissolution action.

The marital dissolution action was set for trial in October 2013. On the trial date, husband, represented by a different attorney than the one who represented him at the June 11, 2012, mediation, submitted a trial brief asserting the mediation agreement resolved all of the issues of spousal support and division of personal property, and the sole remaining issue was the amount of equalization payment husband owed to wife as a result of the division of the real property. In oral discussions, husband's attorney reiterated his position and opined that the trial court was without jurisdiction to determine any issue except equalization of the real property values. Counsel for wife expressed his view that the term "personal property" as used in the 2012 agreement did not include the CDs, bank accounts, and other financial assets of the parties, and the settlement encompassed only the issues in the partnership dissolution action. He believed the judgment in the marital dissolution proceeding reserved jurisdiction of division of the financial assets, and those were still to be divided.

The trial court noted the provision in the 2012 settlement agreement for arbitration before the mediator of disputes about the settlement, and opined that the matter needed to go back to the mediator, retired Judge Howard Broadman, to determine whether the financial assets had already been divided; if they had not, Judge Broadman should divide them through binding arbitration. The parties discussed the valuation of the real properties and agreed on an equalization payment from husband to wife of $239,000, which took into account the $150,000 wife had already received in connection with the 2006 judgment. The trial court entered a judgment on reserved issues that reflected the agreement on valuation and equalization of the real property and ordered the matter to be returned to Judge Broadman for mandatory arbitration of any issues reserved in the 2006 judgment of marital dissolution that had not yet been resolved.

The matter was arbitrated before Judge Broadman, who determined that the 2012 settlement agreement encompassed issues raised in the marital dissolution proceeding, in addition to the partnership issues. He concluded the accounting conducted in the

3.

partnership action included the financial assets wife contended had not yet been divided. A judgment on reserved issues was entered on the arbitrator's decision; it stated the issues reserved by the trial court in the judgment of dissolution were the subject of the parties' June 11, 2012, mediation and were memorialized in their written settlement agreement. Wife appeals.

## *DISCUSSION*

### I.      Compelling Arbitration

#### A.      *Petition to compel*

Wife argues the trial court improperly ordered the parties to arbitrate the scope of the 2012 settlement agreement when neither party had petitioned to compel arbitration. She asserts that, "[i]f a controversy referable to arbitration under an alleged agreement is involved in an action or proceeding pending in a superior court, a petition for an order to arbitrate shall be filed in such action or proceeding" (Code Civ. Proc., § 1292.4),[2] and the petition must be heard in a summary manner on not less than 10 days' notice (§ 1290.2). She asserts, without substantive argument or citation of authority, that the failure to require husband to proceed by petition to compel arbitration violated her right to due process.

Section 1292.4 governs where the petition is to be filed: if an action is already pending on the dispute, the petition shall be filed in that action. The circumstances under which a petition to compel arbitration needs to be filed are set out in section 1281.2:

> "On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy *and that a party thereto refuses to arbitrate such controversy*, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that:

---

[2]      All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

"(a) The right to compel arbitration has been waived by the petitioner; or

"(b) Grounds exist for the revocation of the agreement." (§ 1281.2, italics added.)

When the parties to an arbitration agreement proceed to arbitrate a dispute between them without court intervention, no petition to compel arbitration is required. Here, the parties appeared for trial and a dispute arose about the scope of the issues to be tried in light of the 2012 settlement agreement. Focusing on the language of the settlement agreement, husband's attorney, Leonard Herr, asserted the only issue left to be tried was the equalization of the real property division. Wife's attorney, Stanley Michner, contended Herr was mistaken because he was not present at the mediation that gave rise to the settlement agreement; Michner asserted the trial court had reserved jurisdiction in the judgment of marital dissolution to later divide the financial assets, and the mediation pertained only to the issues in the partnership dissolution action. He contended the judgment of marital dissolution reserved jurisdiction to divide the financial assets only after the real property values were determined by appraisal, so the valuation of the real properties and division of the financial assets remained for trial.

The trial court noted the 2012 settlement agreement included an agreement to binding arbitration of disputes about the language, interpretation, enforcement, application, or performance of the agreement. It opined that the question of what was mediated was within the scope of the arbitration clause and was an issue for the mediator to arbitrate. Michner then obtained clarification that the trial court meant the parties needed to go back to the mediator to have him first determine by binding arbitration whether the financial assets had already been included in the 2012 settlement agreement, and, if not, then arbitrate the appropriate division.

The parties discussed and agreed on the real property issues. The trial court noted the agreement on the real property issues, and added, "and then the other issues are referred back to Judge Broadman; right?" The parties clarified that the resolved real

5.

property issues included the $150,000 wife had received for the down payment on a residence. The trial court proposed setting a case management conference.

> "THE COURT: Then we should probably set a case management conference to review the status of that portion of the judgment. Do you intend to arbitrate the other fairly expeditiously or is that going—
>
> "MR. HERR: I hope to resolve it expeditiously. And, if not, I know the retired judge is quite a little busy person these days so I don't know if expeditious is the way I would characterize his calendar.
>
> "THE COURT: Okay.
>
> "MR. MICHNER: I would think as far as a CMC [case management conference] goes, we should look to the beginning of the year sometime."

There was no further discussion of the arbitration on the trial date. Michner did not object to arbitrating the scope of the 2012 settlement agreement. He did not refuse to arbitrate, so that a petition to compel arbitration was necessary in order to enforce the arbitration agreement. He did not assert the dispute was not within the scope of the arbitration agreement. He did not ask for an opportunity to brief the issue of arbitrability of the scope of the settlement agreement, nor did he ask for a hearing on that question. His conduct manifested an intent to arbitrate pursuant to the arbitration clause in the 2012 settlement agreement without the need for a petition to compel arbitration. The trial court therefore acted reasonably in concluding the parties agreed to arbitrate the dispute pursuant to the arbitration provision in the 2012 settlement agreement, ordering that the dispute be arbitrated rather than tried, and setting a further case management conference to check the status of that arbitration.

Wife did not subsequently file a motion to vacate the arbitration order and place the matter back on the trial court's calendar, or any other motion formally challenging the arbitration order. She cooperated in scheduling the arbitration hearing. She moved to reopen discovery to prepare for the arbitration.

6.

Wife now contends she "moved the court to re-set the trial." The portion of the record she cited in support was her motion to reopen discovery in preparation for arbitration, husband's opposition to that motion, and her reply. In those documents, the only suggestion wife made that the court reset the trial was in the last paragraph of her reply papers. There, she contended *Brock v. Kaiser Foundation Hospitals* (1992) 10 Cal.App.4th 1790 (*Brock*), which husband had cited in his opposition, supported her position. Wife asserted *Brock* held that, if a party wishes to compel contractual arbitration, the party must file a petition to compel arbitration or the right to arbitration is waived. She then concluded the trial court should not have ordered the matter to arbitration and it should reset the trial and allow further discovery. At the hearing of the motion to reopen discovery, the court observed: "I ruled on the arbitration issue when we were here for the trial in October, there's been no challenge to that ruling. It should have been done at the time."

*Brock* does not indicate a petition to compel arbitration is necessary in all cases. After noting that written agreements to arbitrate disputes are valid and enforceable, the *Brock* court stated: "A party to a contractual arbitration agreement may compel *a recalcitrant party* to comply with a valid agreement by means of a petition pursuant to section 1281.2, which is in essence a suit in equity to compel specific performance of the arbitration agreement." (*Brock*, *supra*, 10 Cal.App.4th at p. 1795, fn. omitted & italics added.) Further, "there is nothing to prevent one of the parties to a contractual arbitration provision from resorting initially to an action at law. [Citations.] The other party, if determined to pursue arbitration, must then take action to compel arbitration." (*Id.* at p. 1795.) The party seeking to enforce the arbitration agreement must file the petition to compel in the other party's action or the right to contractual arbitration is waived. (*Ibid.*) Thus, *Brock* posits only that a petition to compel arbitration is necessary when one party refuses to arbitrate or files a court action to litigate the dispute instead of arbitrating it. A suit for specific performance is not necessary if both parties are performing in

7.

compliance with the contract; likewise, a petition to compel arbitration is not necessary when the parties submit their dispute to arbitration in compliance with their agreement to do so.

The circumstances requiring a petition to compel arbitration did not exist at the time the trial court ordered arbitration of the dispute about the scope of the 2012 settlement agreement. Wife did not refuse to arbitrate or object to the trial court referring the case to arbitration pursuant to the parties' agreement. There was no error in the trial court ordering arbitration of the dispute by apparently willing parties.[3]

### B. *Waiver of arbitration right*

Wife contends husband waived or forfeited his right to arbitrate the dispute over the scope of the 2012 settlement agreement by delaying his demand for arbitration and acting in ways inconsistent with arbitration. Under section 1281.2, waiver of the right to compel arbitration is a defense to a petition to compel arbitration. In this case, however, there was no petition to compel arbitration and no occasion to raise the issue of waiver in opposition to such a petition.

The trial court raised the issue of arbitration of the dispute when the dispute arose on the date set for trial. Neither party objected to arbitration. Both appeared to agree the arbitration provision applied to the dispute and the dispute should be arbitrated. Subsequently, wife did not formally challenge the order to arbitrate in the trial court. She did not raise any issue of husband's waiver of the right to arbitrate.

"As a general rule, a party is precluded from urging on appeal any point not raised in the trial court. [Citation.] Any other rule would ""'permit a party to play fast and loose with the administration of justice by deliberately standing by without making an objection of which he is aware and thereby permitting the proceedings to go to a

---

**3** We also note wife made no attempt to prevent entry of judgment on the arbitration award by filing a motion to vacate the arbitrator's award, on the ground of insufficient notice prior to the trial court's entry of the order to arbitrate or on any other ground.

8.

conclusion which he may acquiesce in, if favorable, and which he may avoid, if not.'"''" (*In re Riva M*. (1991) 235 Cal.App.3d 403, 411–412.)  Because wife did not raise in the trial court the issue of husband's alleged waiver of the right to arbitrate, we deem the point forfeited.

## II.     Review of Arbitrator's Decision

### A.     *Standard of Review*

Generally, parties to a contractual arbitration "impliedly agree that the arbitrator's decision will be both binding and final." (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9, fn. omitted.)  "[A]rbitral finality is a core component of the parties' agreement to submit to arbitration." (*Id*. at p. 10.)  Because of this, "it is the general rule that, 'The merits of the controversy between the parties are not subject to judicial review.'" (*Id*. at p. 11.)  Neither the trial court nor the appellate court will review the validity of the arbitrator's reasoning or the sufficiency of the evidence supporting the award.  (*Ibid*.) Courts will not review the arbitrator's decision for errors of fact or law.  (*Ibid*.)  "[A]n award reached by an arbitrator pursuant to a contractual agreement to arbitrate is not subject to judicial review except on the grounds set forth in sections 1286.2 (to vacate) and 1286.6 (for correction)." (*Id*. at p. 33.)

Section 1286.2 sets out the grounds for vacating an arbitration award:

"(1) The award was procured by corruption, fraud or other undue means.

"(2) There was corruption in any of the arbitrators.

"(3) The rights of the party were substantially prejudiced by misconduct of a neutral arbitrator.

"(4) The arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted.

"(5) The rights of the party were substantially prejudiced by the refusal of the arbitrators to postpone the hearing upon sufficient cause

being shown therefor or by the refusal of the arbitrators to hear evidence material to the controversy or by other conduct of the arbitrators contrary to the provisions of this title.

      "(6) An arbitrator making the award either: (A) failed to disclose within the time required for disclosure a ground for disqualification of which the arbitrator was then aware; or (B) was subject to disqualification upon grounds specified in Section 1281.91 but failed upon receipt of timely demand to disqualify himself or herself as required by that provision. However, this subdivision does not apply to arbitration proceedings conducted under a collective bargaining agreement between employers and employees or between their respective representatives." (§ 1286.2, subd. (a).)

The grounds for correction of the arbitration award are as follows:

      "(a) There was an evident miscalculation of figures or an evident mistake in the description of any person, thing or property referred to in the award;

      "(b) The arbitrators exceeded their powers but the award may be corrected without affecting the merits of the decision upon the controversy submitted; or

      "(c) The award is imperfect in a matter of form, not affecting the merits of the controversy." (§ 1286.6.)

In her opening brief, wife did not cite these sections as providing the applicable standard of review. She did not identify any of these grounds as the basis for seeking review of the judgment entered on the arbitrator's decision. Instead, she argued the arbitrator's decision was wrong because: the community accounts remained in issue after the parties entered into the 2012 settlement agreement; wife was required by the judgment to receive one-half of the community accounts; the arbitrator misinterpreted the term "personal property," as used in the 2012 settlement agreement, to include the community accounts; and the arbitrator improperly changed the terms of that settlement agreement by using the wrong definition of the term "personal property."

The only ground for vacating or correcting the arbitration mentioned in wife's opening brief was "[t]he arbitrators exceeded their powers and the award cannot be

10.

corrected without affecting the merits of the decision upon the controversy submitted" (§ 1286.2, subd. (4)), which was included in a quotation from a case cited by wife. Wife does not directly argue that Judge Broadman's arbitration decision exceeded his powers.

"[A]n erroneous decision in an arbitration is not an act in excess of the arbitrator's powers." (*Siegel v. Prudential Ins. Co.* (1998) 67 Cal.App.4th 1270, 1279.) "An arbitrator exceeds his powers when he acts without subject matter jurisdiction [citation], decides an issue that was not submitted to arbitration [citations], arbitrarily remakes the contract [citation], upholds an illegal contract [citation], issues an award that violates a well-defined public policy [citation], issues an award that violates a statutory right [citation], fashions a remedy that is not rationally related to the contract [citation], or selects a remedy not authorized by law [citations]. In other words, an arbitrator exceeds his powers when he acts in a manner not authorized by the contract or by law." (*Jordan v. Department of Motor Vehicles* (2002) 100 Cal.App.4th 431, 443 (*Jordan*).)

Wife essentially contends the arbitrator arbitrarily remade the contract between the parties. She argues he changed the terms of the 2006 judgment and the 2012 settlement agreement, rather than simply interpreting the terms of the settlement agreement. He did so by interpreting the term "personal property," as used in the 2012 settlement agreement, to include the community accounts, which wife asserts were considered separately in the 2006 judgment. As a result, he concluded the 2012 settlement agreement resolved all the issues between the parties to be determined after entry of the 2006 judgment, other than the valuation and equalization of the values of the real property.

"In determining whether an arbitrator exceeded his powers, we review the trial court's decision de novo, but we must give substantial deference to the arbitrator's own assessment of his contractual authority."[4] (*Jordan, supra*, 100 Cal.App.4th at pp. 443–

---

[4]     Wife did not petition to vacate the arbitration award, so the trial court did not rule on any claim that the arbitrator exceeded his powers.

11.

444.)  "'Although [Code of Civil Procedure] section 1286.2 permits the court to vacate an award that exceeds the arbitrator's powers, the deference due an arbitrator's decision on the merits of the controversy requires a court to refrain from substituting its judgment for the arbitrator's in determining the contractual scope of those powers.'"  (*Id*. at p. 444.)

"'Generally, a decision exceeds the arbitrator's powers only if it is so utterly irrational that it amounts to an arbitrary remaking of the contract between the parties.' [Citations.]  'The mere fact that a different construction could have been accorded the provisions concerned and a different conclusion reached does not mean that the arbitrators so misread those provisions as to empower a court to set aside the award.'"  (*Blue Cross of California v. Jones* (1993) 19 Cal.App.4th 220, 228 (*Blue Cross*).)

The trial court referred two issues to arbitration:  (1) whether the parties had already determined the division of the community accounts in their 2012 settlement agreement and (2) if not, then how those accounts should be divided.  Judge Broadman considered the 2012 settlement agreement and took extrinsic evidence through the testimony of husband, wife, and Kevin Daniel, the joint expert who performed an accounting of the business in the partnership dissolution action.  The arbitrator initially determined the 2012 settlement agreement was unambiguous.  "That agreement resolved all disputed issues in the dissolution of marriage action as well as in two other ancillary actions."  Judge Broadman noted the heading of the 2012 settlement agreement referred to "the marriage of Benigno," and the body referred to the parties as "Husband" and "Wife," indicating the parties were addressing marital issues, and not just issues in the other actions, as claimed by wife.  The agreement awarded each party the personal property in his or her possession.  The term "personal property" was not defined in the agreement; the arbitrator found the term typically includes financial assets (citing § 17, former subd. (b)(3), now subd. (b)(8)(A)).  The 2012 agreement did not include language carving out any disputed issues for later resolution.  From these facts, Judge Broadman rejected wife's contention the agreement pertained only to the partnership dissolution

12.

action, a contract action filed by wife, and the issue of spousal support; he found her argument that the agreement carved out the issue of equalizing financial accounts for later resolution was inconsistent with the express terms of the agreement.

Judge Broadman also determined that, even if the 2012 settlement agreement was ambiguous, the extrinsic evidence indicated the parties resolved all outstanding disputes relating to the dissolution of marriage, with the exception of appraisal and equalization of the real property values; the parties did not leave the issue of the financial accounts for later decision. Judge Broadman noted the parties had, for years, worked to effect an equal division of the property in accordance with the terms of the 2006 judgment. They commenced the partnership dissolution action and had Daniel perform an accounting. Daniel had difficulty analyzing the partners' capital accounts because of the condition of the records. He reviewed a number of personal accounts, but assigned them zero balances. Wife had also filed a separate action based on oral contract and common counts, regarding loans allegedly made to husband. Each party accused the other of misappropriating funds. The arbitrator found the business and personal financial issues were inextricably bound together; the business was the source of the parties' wealth, but the parties did not observe corporate formalities and did not maintain clear corporate records. "These interconnected issues were so convoluted that even an experienced accountant could not unravel them after exercising reasonable diligence." Based on these facts, Judge Broadman was persuaded by husband's testimony that, because both parties had taken money from the business without accounting for it, the parties had decided to treat their competing claims as a "'wash.'"

Wife contends the arbitrator materially changed the parties' agreement by defining "personal property" to include the community financial accounts. She asserts the judgment determined the meaning of the term, and it excluded the financial accounts. She also argues the arbitrator changed the judgment by disregarding the provision of the judgment requiring appraisal of the real property before equalization of all the property.

13.

The arbitrator's task was to construe the 2012 settlement agreement, which was reached during a mediation at which he acted as mediator. He considered the terms of that agreement and extrinsic evidence offered by both parties to assist in construing it. The term "personal property" was not defined in the 2012 settlement agreement, and Judge Broadman acted reasonably in interpreting it in accordance with the statutory definition. Contrary to wife's assertions, the parties did not define the term "personal property" in the marital settlement agreement that was incorporated into the 2006 judgment. Even if they had, there was nothing in the 2012 settlement agreement to indicate the parties intended to incorporate into that agreement any definition of "personal property" from another source.

As to wife's contention the arbitrator exceeded his powers by disregarding the order in which the judgment contemplated the issues would be addressed by the parties, we note the task of the arbitrator was to construe the 2012 settlement agreement, not the 2006 judgment. The parties chose to address issues reserved in the marital dissolution judgment during the mediation of the partnership dissolution action. To the extent they reached agreement on those issues and memorialized that agreement in the 2012 mediation settlement agreement, Judge Broadman did not exceed his powers by interpreting that agreement and its scope, regardless whether the parties reached certain issues out of turn.

We conclude wife has not demonstrated the arbitrator's decision was "'so utterly irrational that it amount[ed] to an arbitrary remaking of the contract between the parties.'" (*Blue Cross*, *supra*, 19 Cal.App.4th at p. 228.) Accordingly, the arbitrator's decision did not exceed his powers, and wife has not demonstrated any basis for reversing the judgment entered on that decision.

In her reply brief, wife cites "corruption, fraud or other undue influence" as a ground for vacating an arbitration decision. (§ 1286.2, subd. (a)(1).) She asserts husband changed positions, first conceding equalization of the financial accounts remained an

14.

issue for trial, then asserting at trial that those accounts were personal property already divided in the 2012 settlement agreement.  She implies that this change of position constituted corruption, fraud or other undue influence, justifying rejection of the arbitration decision.

"This court will not consider points raised for the first time in a reply brief for the obvious reason that opposing counsel has not been given the opportunity to address those points [citations], particularly when [appellant] also failed to raise such issue before the trial court."  (*REO Broadcasting Consultants v. Martin* (1999) 69 Cal.App.4th 489, 500.)  Because wife did not raise this issue in the trial court or in her opening brief, we will disregard it.

## ***DISPOSITION***

The judgment is affirmed.  Husband is entitled to his costs on appeal.


_____

HILL, P.J.

WE CONCUR:


_____

GOMES, J.


_____

KANE, J.