Filed 4/21/15  Schapiro-Thorn Inc. v. Mitchell CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SCHAPIRO-THORN, INC., <br><br>     Plaintiff and Respondent, <br><br> v. <br><br> DANIEL L. MITCHELL, <br><br>     Defendant and Appellant. | A140800 <br><br> (City & County of San Francisco <br> Super. Ct. No. CGC-09-495377) |

Daniel L. Mitchell appeals from a judgment confirming an arbitration award entered against him in favor of his former attorneys Schapiro-Thorn, Inc. (Schapiro-Thorn). Mitchell's sundry contentions are based on the fact the arbitration panel proceeded with the arbitration after the death of the party-arbitrator Mitchell had selected and refused to continue the hearing to permit Mitchell to select another party arbitrator.

As troublesome as this circumstance may appear at first blush, the record fully supports the finding of the panel that Mitchell had "evinced his unwillingness to participate in [the arbitration] proceedings repeatedly during the scheduling of this matter" and that under the circumstances there was "no basis in law or equity" to continue the scheduled arbitration hearing. The arbitrator designated by Mitchell had been ill for an extended period of time, neither he nor Mitchell (himself an attorney) had participated in any of the noticed prehearing conferences or complied with any of the prescribed preliminary procedures, and Mitchell had failed to replace his designated arbitrator despite his extended inability to participate in the proceedings.

1

We agree with the trial court's implicit determination that there is no statutory basis to vacate the arbitration award, and agree that the award was properly confirmed.

## Background

Schapiro-Thorn, in the person of Suzie Thorn, represented Mitchell in marriage dissolution proceedings and, in December 2009, brought an action against him to collect $197,728.55 of attorney fees and costs. In February 2010 Mitchell answered the complaint and filed a cross-complaint against the law firm alleging negligence, breach of contract and fraud.[1] On May 11, 2010, pursuant Schapiro-Thorn's unopposed motion, the court ordered the parties to arbitrate their dispute in accordance with the arbitration provision in their fee agreement,[2] and stayed the judicial proceedings pending the outcome of the arbitration.

The arbitration provision required each party to select a "party arbitrator" who, in turn, would select a "neutral arbitrator." Schapiro-Thorn selected Honorable Harry Low (ret.) as its party arbitrator on May 24, 2010. Mitchell initially refused to select his arbitrator and, in October, Schapiro-Thorn moved for an order compelling him to do so. The court granted this motion on November 4, 2010, and on November 15, 2010, the last date permitted by the court's order, Mitchell selected attorney Herman C. Meyer as his

---

[1] Schapiro-Thorn has contended that it was not properly served with the cross-complaint because it was served by Mitchell himself, a party to the action. For present purposes it is unnecessary to describe proceedings in the trial court challenging the sufficiency of the service and the motion to vacate the entry of Schapiro-Thorn's default on the cross-complaint. In all events no answer to the cross-complaint was filed.

[2] The arbitration agreement in the parties' fee agreement reads in relevant part as follows: "If . . . a dispute exists between the attorney and client regarding attorney's fees and/or costs due under this Agreement or regarding a claim of attorney malpractice, . . . the dispute will be submitted for arbitration, and the attorney and client will be bound by the result. [¶] . . . [¶] Arbitration shall be in accordance with Code of Civil Procedure § 1280 *et seq.* with each party selecting a party arbitrator who, in turn, shall select a neutral arbitrator . . . . [¶] A ruling by the majority of arbitrators shall conclusively resolve the dispute, and the parties agree that the court having jurisdiction may enter judgment upon the decision of the arbitrators, including costs and a reasonable allowance of attorney fees involved in securing said judgment to the extent by law. Neither party shall have any right to appeal the decision of the arbitrators. . . ." (Emphasis in original.)

2

party arbitrator. The two arbitrators failed to select the third neutral arbitrator (likely as the result of Meyer's failure to agree to anyone, although the record is not clear in this respect), and over a year later, on November 29, 2011, in response to Schapiro-Thorn's motion, the court designated Honorable David Garcia (ret.) as the third arbitrator.

Mitchell then refused to pay the initial arbitration fees charged by JAMS-Endispute. Schapiro-Thorn filed still another motion to compel him to do so, which the court granted on August 23, 2012. Mitchell failed to comply with the order and on December 5, 2012 and December 24, 2012 the court issued orders to show cause re contempt. On March 11, 2013, the court, although not holding Mitchell in contempt, ordered him to pay $1,500 to Schapiro-Thorn as a discovery sanction. Mitchell failed to pay his half of JAMS's fees for a two-day arbitration by the July 7, 2013 deadline, or by the extended July 23 deadline, and Schapiro-Thorn thereupon paid the entire fee for a one-day hearing.

On March 20, 2013, Schapiro-Thorn filed its "Notice of Claim" in the arbitration proceedings. Mitchell filed no response or statement of affirmative defenses, although a response is permitted and affirmative defenses are required to be filed within 14 days of service of the claimant's notice under JAMS Comprehensive Arbitration Rules and Procedures.[3]

On March 18, 2013 — almost three years after arbitration had been ordered — the administrative assistant to Judge Garcia, also referred to as the case manager, advised Schapiro-Thorn's attorney that she had contacted Meyer in an attempt to arrange an initial telephone conference between the three arbitrators and had learned that Meyer was hospitalized with internal bleeding and would not be available to participate until the second week in April. On April 12, 2013, the administrative assistant sent an email to

---

[3] Rule 9(c) of the Comprehensive Arbitration Rules and Procedures reads: "Within fourteen (14) calendar days of service of the notice of claim, a Respondent may submit to JAMS and serve on other Parties a response and must so submit and serve a statement of any affirmative defenses (including jurisdictional challenges) or counterclaims it may have."

counsel and to Mitchell advising them of Meyer's continuing unavailability: "Herman Meyer, one of the three arbitrators in this case has been unavailable due to health issues. I have received a message from his family that at this point he is unavailable to work on the arbitration but hopes to be available within the next month." The assistant said she would discuss the matter with Judge Garcia and then advise the parties of "our next steps." Four days later the administrative assistant sent an email message to Mitchell, copies to counsel, advising that she had spoken to Judge Garcia "to let him know that Mr. Meyer is very ill and right now unable to participate as an arbitrator (he does want to continue eventually)" and that she would like to schedule a conference call the following week with Judge Garcia "to discuss the issue of Mr. Meyer's unavailability." Counsel for Schapiro-Thorn by return email requested the assistant to advise Judge Garcia "that Schapiro Thorn is frustrated by the pace of the arbitration" and to ask him, among other things, to advise the parties to "determin[e] by a date certain whether Mr. Meyer intends to participate, and/or replacing him if necessary." Mitchell immediately responded that he "want[ed] to be present if Judge Garcia is to be addressed on behalf of Schapiro-Thorn." It does not appear from the record that such a conference call occurred.

However, on May 8, Judge Garcia and Justice Low conducted an "arbitrator-only conference" and issued "Scheduling Order #1 and Report of Arbitrators-only Conference." The order recites that Meyer "received notice of the hearing but did not attend." The order provided as follows with respect to the role of the arbitrators: "Party Appointed Arbitrators. The party appointed arbitrators shall conduct themselves as neutral arbitrators and shall have no ex parte communications with the parties, nor shall the parties have or attempt any ex parte contact with the arbitrator they appointed. [¶] a. The panel is to be viewed as a unit; *ex parte* and ethics rules apply; [¶] b. Judge Garcia will be the presiding officer . . . ." The order provided further that the case manager should arrange a scheduling conference as soon as practicable and that counsel for the parties "shall attend and be prepared to discuss" a list of subjects, including the proposed arbitration date, completion of the exchange of information pursuant to JAMS rules, depositions, the preparation of hearing exhibits and the submission of prehearing briefs.

4

A case management conference was scheduled for May 29, 2013, but neither Meyer nor Mitchell appeared and the conference was rescheduled for June 20.

On June 20, 2013, a case management conference was conducted before Judge Garcia and Justice Low. "Scheduling Order #2 and Report of Case Management Conference," issued on June 27, indicates that both Meyer and Mitchell received notice of the conference but that neither attended. The order also states, "Mr. Mitchell failed to attend a prior case management conference necessitating the rescheduling of the Case Management Conference on June 20, 2013, which conference was ordered by Scheduling Order #1." With respect to the situation concerning Meyer's absence, this order provided:

> "Party Appointed Arbitrator Herman C. Meyer. Mr. Meyer has failed to attend the two conferences conducted by the panel of arbitrators. Should Mr. Meyer be unable to participate further in these proceedings, Mr. Mitchell shall forthwith arrange for the appointment of a party appointed neutral. . . . Unless otherwise informed, Mr. Meyer shall be deemed available to serve as a panelist for the hearing scheduled below.
>
>> "a.    Except as provided in paragraph 2.b., and as specified in Scheduling Order #1, the party appointed arbitrators shall conduct themselves as neutral arbitrators and shall have no ex parte communications with the parties, nor shall the parties have or attempt any ex parte contact with the arbitrator they appointed. The panel is to viewed as a unit; ex parte and ethics rules apply;
>>
>> "b.    Mr. Mitchell may inquire of any neutral he wishes to appoint regarding their availability to serve as a neutral on the schedule established below."

Scheduling Order #2 went on to establish a series of dates for the exchange of documents and witness lists and related prehearing matters, and provided that the hearing would commence on August 6, 2013. Mitchell submitted none of the materials that were required by this order to be submitted on various dates between July 7 and July 25.

By a letter dated July 27, 2013, sent by regular mail to the case manager, copy to Schapiro-Thorn's attorney, received on July 29, Mitchell first advised them that Meyer had died more than two weeks before, on July 10, and added: "It appears that any scheduling in this matter must be continued while I retain an arbitrator to replace Mr. Meyer."

5

The two remaining members of the arbitration panel treated Mitchell's letter as a motion to continue the scheduled August 6 hearing and on July 30, following receipt of Schapiro-Thorn's opposition to a continuance, issued Scheduling Order #3. The panel denied the requested continuance with the following explanation:

"<u>Request to Continue Hearing.</u> The Respondent's request to continue the hearing scheduled for August 6, 2013 is denied.

"a.   Mr. Mitchell's request to continue makes no showing of good cause for a continuance.

"b.   Mr. Mitchell has evinced his unwillingness to participate in these proceedings repeatedly during the scheduling of this matter, and while the undersigned are grieved at Mr. Meyer's demise can find no basis in law or equity to grant the relief requested.

"c.   Scheduling Order #2 provides regarding service that service 'unless otherwise stipulated to by the parties, shall occur by either facsimile or email to counsel.' Service of the instant request [i.e., appellant's July 27 letter] was not made in compliance with this order. Notwithstanding that failure the undersigned will treat the request as having been served though not as expeditiously as warranted or required.

"d.   Scheduling Order #2 reflects that, 'Mr. Mitchell failed to attend a prior case management conference[,] necessitating the rescheduling of the Case Management Conference on June 20, 2013, which conference was ordered by Scheduling Order #1.'

"e.   Mr. Mitchell has not completed the exchange of information required by Scheduling Order #2, nor has he otherwise complied with any of the deadlines set forth in Scheduling Order #2 requiring the exchange witness lists and hearing exhibits.

"f.   Scheduling Order #2 further reflects that the Respondent's Party Appointed Arbitrator Herman C. Meyer 'has failed to attend the two conferences conducted by the panel of arbitrators.'

"g.   Scheduling Order #2 accordingly provides that '[s]hould Mr. Meyer be unable to participate further in these proceedings, Mr. Mitchell shall forthwith arrange for the appointment of a party appointed neutral who shall communicate with Joyce Florence regarding appointment. Unless otherwise informed, Mr. Meyer shall be deemed available to serve as a panelist for the hearing scheduled below.'

6

"h. When so ordered the undersigned arbitrators were informed that Mr. Meyer was *in extreinis* and would in all likelihood be unavailable to participate further.

"i. Scheduling Order #2 required that Mr. Mitchell inform himself immediately as to Mr. Meyer's availability and replace him. Mr. Mitchell took no action to replace Mr. Meyer and as is reflected in his request he has yet to take any such action.

"j. Accordingly, the hearing will commence and conclude on August 6, 2013. . . ."

Mitchell's petition to this court seeking a writ of mandate and a stay to halt the arbitration hearing was denied on August 5, with the qualification that the denial was "without prejudice to the arbitration panel, upon Daniel L. Mitchell's motion, exercising its independent authority to continue the arbitration hearing." (No. A139381.)

Mitchell made no such further motion and failed to appear at the hearing on August 6, 2013. The hearing before Judge Garcia and Justice Low nonetheless proceeded as scheduled. On August 12, 2013, the panel issued an interim award and on September 9 a final award. Both recited the history of the proceedings as described above, addressed the merits of the dispute, and awarded Schapiro-Thorn $243,794.99 after deducting $10,098.48 in the firm's trust account which the firm was authorized to pay to itself, plus interest from the date of the interim award. The interim award authorized Schapiro-Trust to file a motion for attorney fees incurred in connection with the arbitration proceedings but the firm waived the right to do so.

On October 7, 2013, Schapiro-Thorn filed in superior court a petition to confirm the arbitration award and a motion for an order to grant the petition and enter judgment on the award. Mitchell filed a motion to strike Schapiro-Thorns's supporting evidence and an opposition to the motion. The opposition argued the merits of the claim for attorney fees and, without reference to any provision of the Code of Civil Procedure, asserted that "The Neutral Arbitrator and the Plaintiff's Party Arbitrator erred by their determination to deny Mitchell representation" allegedly in contravention of the terms of the arbitration agreement entitling both parties to select a party arbitrator. The court granted the motion

7

and on November 15, 2013, entered judgment confirming the award. Mitchell has timely appealed.

## Discussion

In his appellate briefs, Mitchell cites Code of Civil Procedure[4] section 1286.2, subdivisions (a)(3), (a)(4) and (a)(5) with virtually no discussion of how these subdivisions arguably apply. These provisions provide as follows: "(a) Subject to Section 1286.4, the court shall vacate the award if the court determines any of the following: [¶] . . . [¶] (3) The rights of the party were substantially prejudiced by misconduct of a neutral arbitrator. [¶] (4) The arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted. (5) The rights of the party were substantially prejudiced by the refusal of the arbitrators to postpone the hearing upon sufficient cause being shown therefor or by the refusal of the arbitrators to hear evidence material to the controversy or by other conduct of the arbitrators contrary to the provisions of this title." Mitchell's cursory argument indicates he contends the arbitrators exceeded their authority by disregarding the provision of the arbitration agreement requiring each party to select a party arbitrator (§ 1286.2, subd. (a)(4)), and he presumably contends that his rights were substantially prejudiced by the refusal of the arbitrators to postpone the hearing upon sufficient cause (*id.*, subd. (a)(5)).

Schapiro-Thorn argues initially that Mitchell is precluded from challenging the confirmation of the award on these grounds because he failed to file a petition to vacate the award under section 1285 [5] or a response to Schapiro-Thorn's petition to confirm under section 1285.2.[6] It argues that under section 1286, "the court shall confirm the award as made . . . unless in accordance with this chapter it corrects the award and

---

[4] All statutory references are to the Code of Civil Procedure.

[5] Section 1285 provides: "Any party to an arbitration in which an award has been made may petition the court to confirm, correct or vacate the award. . . ."

[6] Section 1285.2 provides: "A response to a petition under this chapter may request the court to dismiss the petition or to confirm, correct or vacate the award."

8

confirms it as corrected, vacates the award or dismisses the proceedings." And section 1286.4 provides: "The court may not vacate an award unless: [¶] (a) A petition or response requesting that the award be vacated has been duly served and filed; or [¶] (b) A petition or response requesting that the award be corrected has been duly served and filed . . . ." (*Valsan Partners Limited Partnership v. Calcor Space Facility, Inc.* (1994) 25 Cal.App.4th 809, 818.) We cannot accept Schapiro-Thorn's argument in this respect.

Although Mitchell did not, literally, file a response to the petition to confirm the award, he did file an opposition to Schapiro-Thorn's separate motion to grant the petition. This opposition was in substance a request to vacate the award. To the extent that the opposition asserted grounds on which the award should be vacated, Schapiro-Thorn received notice of Mitchell's contention and the trial court presumably considered and rejected his arguments in granting the motion. Hence, it is necessary to consider Mitchell's objections on the merits.

Nor do we agree with Schapiro-Thorn's suggestion that the issues Mitchell obliquely presents are not subject to judicial review. While the scope of judicial review of an arbitration award is "extremely narrow" (*Southern Cal. Rapid Transit Dist. v. United Transportation Union* (1992) 5 Cal.App.4th 416, 422), "[w]hether the arbitrator's decision exceeded the arbitrator's powers is a question of law we review de novo on appeal" (*id.* at p. 423). However, substantial deference should be given "to the arbitrators' own assessments of their contractual authority." (*Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 373.)

Exercising our independent judgment, we agree fully with the trial court's determination that the arbitrators neither exceeded their authority nor prejudiced Mitchell's rights by proceeding with the arbitration hearing under the circumstances revealed by this record.[7] While the parties' arbitration agreement provides that "each party [shall] select[] a party arbitrator who, in turn, shall select a neutral arbitrator," these

---

[7] On appeal Mitchell does not assert that the trial court erred in failing to sustain his objections to the evidence submitted in support of the petition and motion to confirm the award.

9

procedures were followed, albeit upon repeated orders by the trial court compelling Mitchell to comply.

The record amply supports Schapiro-Thorn's characterization that Mitchell consistently did "everything he could do to delay the contractual arbitration." While there is no dispute that Meyer's medical condition and inability to participate as Mitchell's selected arbitrator were genuine, Mitchell demonstrated his unwillingness to submit the parties' claims to arbitration at the outset by initially refusing to appoint his party arbitrator and, when ordered to do so, selecting an individual whose ability to perform was at the least questionable. When it became clear that Meyer was unable to participate, Mitchell failed to replace him as he was urged to do. Finally, when Meyer died on July 10, Mitchell waited more than two — almost three — weeks to inform the other arbitrators and opposing counsel. Rather than file a request for a continuance, he merely sent by regular mail a letter implying that the arbitration would have to be continued indefinitely, without any indication that he was making efforts to locate a replacement or when that might be expected. Mitchell, himself an attorney representing himself in the proceedings, failed to pay his share of the arbitration fees (though ordered to do so), failed to attend all prehearing conferences, failed to exchange documents as required by the governing rules of procedure and Scheduling Order #2, and failed to submit any of the materials that were required in preparation for the hearing, including a response to the notice of claim, exhibits, witness list, and a prehearing brief. In view of this history, the remaining arbitrators were entitled to conclude that Mitchell had no intention to participate in the arbitration, unaffected by Meyer's medical condition and ultimate death.

Whatever Mitchell's intentions, by his persistent refusal to comply with the applicable procedures, as well as his failure to object to either of the scheduling orders entered by two members of the panel, he may reasonably be held to have forfeited any rights he might have had to object to the remaining panel members' decision to proceed with the hearing.

In all events, there is no question but that the issues submitted to arbitration and decided by the award were squarely within the scope of issues that the parties agreed to

submit to arbitration, and thus within the power of the arbitrators to decide. (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 28; *Southern Cal. Rapid Transit Dist. v. United Transportation Union, supra,* 5 Cal.App.4th at p. 423 ["Generally, a decision exceeds the arbitrator's powers only if it is so utterly irrational that it amounts to an arbitrary remaking of the contract between the parties."].) The absence of the third arbitrator gave rise to no prejudice. Rule 7(c) of JAMS Comprehensive Arbitration Rules & Procedures provides, "Where the Parties have agreed that each Party is to name one Arbitrator, the Arbitrators so named shall be neutral and independent of the appointing Party unless the Parties have agreed that they shall be non-neutral." Scheduling Orders #1 and #2 both stated that "[t]he party appointed arbitrators shall conduct themselves as neutral arbitrators and shall have no ex parte communications with the parties, nor shall the parties have or attempt any ex parte contact with the arbitrator they appointed." There is no reason to believe that this restriction was not observed by the panel members.

Rule 24(b) of JAMS Comprehensive Arbitration Rules & Procedures provides that the "Award of a majority of the panel shall constitute the Arbitration Award." Since the two remaining panel members were in agreement as to the award, the presence of the third panel member would not have affected the outcome even if he did not agree with it. Moreover, it is worth noting that although Mitchell failed to appear at the August 6 hearing, the panel members received and considered evidence and issued a thorough decision carefully analyzing the issues presented.

Although no reference to this rule appears in the briefs of either party, we have not overlooked rule 15(g) of JAMS Comprehensive Arbitration Rules & Procedures. This rule provides, "If, for any reason, the Arbitrator who is selected is unable to fulfill the Arbitrator's duties, a successor Arbitrator shall be chosen in accordance with this Rule." Mitchell had the opportunity to select a successor arbitrator and failed to do so. Moreover, by failing to assert the need to comply with this rule in the arbitration proceedings, and by failing to mention or make any argument based on this rule in his briefs to this court, and apparently to the trial court, Mitchell has thrice waived any

11

possible objection based on asserted noncompliance with the rule. (See 9 Witkin, Cal. Proc. (5th ed. 2008) Appeal, § 400, pp. 458-459; § 701, pp. 769-771.)

None of the cases cited by Mitchell casts any doubt on these conclusions. *Vandenberg v. Superior Court* (1999) 21 Cal.4th 815 answered the question whether an arbitration award is entitled to collateral estoppel effect in favor of a nonparty to the arbitration, and a second unrelated question concerning the scope of insurance coverage. In the course of answering the first question the court reiterated that the scope of arbitration is determined by the agreement of the parties. (*Id.* at p. 830.) The same restatement of this principle appears in *Moncharsh v. Heily & Blase, supra,* 3 Cal.4th at page 8, addressing the scope of review of an arbitrator's decision for errors of law, and in *Advanced Micro Devices, Inc. v. Intel Corp., supra,* 9 Cal.4th at page 375, addressing the standard of review of remedies fashioned by an arbitrator.

Similarly, in *California Faculty Assn. v. Superior Court* (1998) 63 Cal.App.4th 935, the court again reiterated that the scope of arbitration is determined by the parties' agreement, and held that the atypical arbitration agreement contained in a collective bargaining agreement with California State University did not submit to arbitration whether to grant tenure and promotion to a probationary faculty member. *Marsch v. Williams* (1994) 23 Cal.App.4th 250 again repeated the proposition that the scope of arbitration is determined by the terms of the arbitration agreement and held that an agreement to arbitrate disputes arising in connection with one partnership agreement did not encompass disputes arising out of a different partnership agreement.

None of these cases address the issue presented in this case. There is no question but that the agreement between the parties governs the nature and scope of the arbitration. Here, the panel of arbitrators was selected in accordance with the terms of the agreement but, among his other derelictions, Mitchell failed to select a replacement when that person was unable to participate. His own failure to comply does not establish that the remaining two arbitrators exceeded their authority in proceeding with the duly noticed hearing.

Mitchell entered an agreement requiring resolution of the disputes that arose between him and Schapiro-Thorn by arbitration, implicitly subject to the applicable rules of the arbitration provider (so long as consistent with the Code of Civil Procedure). Rule 22(j) of JAMS Comprehensive Arbitration Rules & Procedures provides that "[t]he Arbitrator may proceed with the Hearing in the absence of a Party that, after receiving notice of the Hearing pursuant to Rule 19, fails to attend." And rule 29 provides, "The Arbitrator may order appropriate sanctions for failure of a Party to comply with its obligations under any of these rules. These sanctions may include, but are not limited to, . . . in extreme cases, determining an issue or issues submitted to Arbitration adversely to the Party that has failed to comply." Although neither of these rules is directly applicable to the present situation, both reflect the fundamental policy that a recalcitrant party should not be permitted to obstruct the expeditious resolution of disputes submitted to arbitration. The decision of the two remaining panel members to proceed in the absence of the third member with an arbitration ordered more than three years before, given Mitchell's total noncompliance with the governing rules and procedures, was in full accord with this policy and neither an abuse of discretion nor beyond the arbitrators' authority. The arbitrators were fully justified in finding that Mitchell failed to show good cause for a continuance of the August 6, 2013 hearing and, as the trial court correctly determined, there is no basis to vacate the resulting award.

## Disposition

The judgment is affirmed.

_____
Pollak, J.

We concur:


_____
McGuiness, P. J.


_____
Siggins, J.