[No. B058413. Second Dist., Div. Seven. Apr. 9, 1992.]

SOUTHERN CALIFORNIA RAPID TRANSIT DISTRICT, Plaintiff and Appellant, v.
UNITED TRANSPORTATION UNION, Defendant and Respondent.

COUNSEL

Suzanne B. Gifford and Richard A. Katzmann for Plaintiff and Appellant.

Lawrence Drasin for Defendant and Respondent.

OPINION

JOHNSON, J.—The Southern California Rapid Transit District (SCRTD) appeals from an order confirming an arbitration award in favor of the United Transportation Union (union). We affirm.

### FACTS AND PROCEEDINGS BELOW

The present dispute stems from a decision by the Los Angeles County Transportation Commission to create a new transportation system in the San

Gabriel Valley to be known as the Foothill Transit Zone (Foothill). Foothill would take over 14 bus lines presently operated by the SCRTD. SCRTD's consent was required for the takeover of its bus lines.

Initially, the SCRTD refused to consent to the formation of Foothill. However, after the commission began withholding approximately $9 million per month in subsidies from SCRTD, the SCRTD relented and gave its consent to Foothill.

The union and others filed suit against SCRTD, the commission and Foothill to enjoin operation of the new transit zone on the grounds Foothill's operation violated various provisions of the Public Utilities Code, the union's collective bargaining agreement with SCRTD and other labor contracts. Following a court trial, the court refused to award a permanent injunction against Foothill's operation. As to the union's contention SCRTD's transfer of the bus lines violated provisions of the collective bargaining agreement, the trial court found the SCRTD lines were assets for purposes of the agreement but the union's sole remedy for breach of the contract was binding arbitration.

The union then commenced arbitration proceedings against SCRTD claiming SCRTD had transferred assets (the 14 bus lines) to Foothill without complying with article 51, section 2 of the collective bargaining agreement which provides:

"As a condition to the sale, transfer or other disposition of its facilities or assets or any part of them to any other agency, firm or corporation, the District shall require as a condition to said sale, transfer or other disposition, that the acquiring agency, firm or corporation, assume and observe all existing labor contracts, to which the United Transportation Union is a party and shall appoint all of the employees of the District covered by this Contract, to comparable positions without the loss of any rights or benefits to which they are then entitled."[1]

At the arbitration hearing, the SCRTD argued the union had waived arbitration by bringing the litigation described above and that the principles of equitable estoppel and res judicata barred any relief for a violation of the provisions of the bargaining agreement at issue. Subject to that objection, the

---

[1] The arbitration also involved SCRTD's alleged violation of article 51, section 1 which provides SCRTD shall not dispose of any assets without first making adequate provision for any union members adversely affected thereby. The arbitrator found SCRTD violated this provision and ordered the parties to meet and confer on a remedy. SCRTD does not challenge this portion of the arbitrator's decision.

parties stipulated the issues before the arbitrator were (1) "Did the District violate the collective bargaining Agreement by consenting to the establishment and implementation of the Foothill Transit Zone" and (2) "[I]f so, what is the appropriate remedy." The parties also stipulated that should the arbitrator find SCRTD violated the agreement with the union he was not to make any determination as to monetary damage but was to retain jurisdiction of that question pending an attempt by the parties to resolve the amount of damages.

After hearing evidence and argument from both parties, the arbitrator found SCRTD had consented to a transfer of its assets to Foothill without complying with the requirements of article 51, sections 1 and 2 of the collective bargaining agreement. The arbitrator specifically rejected SCRTD's contentions the dispute was not arbitrable and that article 51, section 2 violated federal and state labor laws, the Public Utilities Code and public policy.

As a remedy for violation of article 51, section 2 of the collective bargaining agreement, the arbitrator held SCRTD's consent to transfer of its assets "was void and invalid and therefore the [SCRTD's] consent . . . should be withdrawn." As to the violation of section 1, the arbitrator retained jurisdiction over the remedy and ordered the parties to attempt to resolve the question of remedy themselves.

SCRTD petitioned the superior court for an order vacating or correcting the arbitration award. The union opposed the petition and requested the order be confirmed. (Code Civ. Proc., § 1285 et seq.) The superior court confirmed the award and the SCRTD timely appealed. (Code Civ. Proc., §§ 1287.4, 1294, subd. (d).)

DISCUSSION

I.  *The Scope of Review of Arbitration Decisions Under Contractual Arbitration.*

■   Where a dispute is arbitrated pursuant to contract, as in this case, "[t]he court shall confirm the award as made" unless, inter alia, "[t]he arbitrators exceeded their powers." (Code Civ. Proc., §§ 1286, 1286.2, subd. (d).) As we noted in *Hacienda Hotel* v. *Culinary Workers Union* (1985) 175 Cal.App.3d 1127, 1133 [223 Cal.Rptr. 305], the scope of judicial review under section 1286.2, subdivision (d) is extremely narrow. "Even if the arbitrator's decision on the issue submitted was wrong . . . [if] it was within his power to make that decision [the] plaintiff is bound by it." Thus,

" '[n]either the merits of the controversy . . . nor the sufficiency of the evidence to support the arbitrator's award are matters for judicial review.' " (*Morris* v. *Zuckerman* (1968) 69 Cal.2d 686, 691 [72 Cal.Rptr. 880, 446 P.2d 1000], quoting *Jordan* v. *Pacific Auto Ins. Co.* (1965) 232 Cal.App.2d 127, 135 [42 Cal.Rptr. 556].)

Generally, a decision exceeds the arbitrator's powers only if it is so utterly irrational that it amounts to an arbitrary remaking of the contract between the parties. (*Posner* v. *Grunwald-Marx, Inc.* (1961) 56 Cal.2d 169, 184 [14 Cal.Rptr. 297, 363 P.2d 313]; *Summit Industrial Equipment, Inc.* v. *Koll/Wells Bay Area* (1986) 186 Cal.App.3d 309, 320 [230 Cal.Rptr. 565].)

Arbitrators also exceed their powers in enforcing a contract provision illegal on its face or as applied. (*Black* v. *Cutter Laboratories* (1955) 43 Cal.2d 788, 798 [278 P.2d 905]; *Carl N. Swenson Co.* v. *E.C. Braun Co.* (1969) 272 Cal.App.2d 366, 372 [77 Cal.Rptr. 378].)

Whether the arbitrator's decision exceeded the arbitrator's powers is a question of law we review de novo on appeal. (*Hacienda Hotel* v. *Culinary Workers Union, supra*, 175 Cal.App.3d at pp. 1133-1134.)

II. *The Arbitration Decision Did Not Remake the Contract in Holding the Dispute Between the Parties Arbitrable and Awarding Equitable Relief.*

■ The powers of the arbitrator are derived from the underlying contract and the stipulation of submission. (*Hacienda Hotel* v. *Culinary Workers Union, supra*, 175 Cal.App.3d at p. 1131.) The SCRTD does not dispute the arbitrability vel non of the issues. ■ Rather, it argues the issues are barred from arbitration on the ground of waiver, estoppel and res judicata. Even if the arbitrator committed error in this respect—a question we do not decide—it is, at most, an error of law, not reviewable by the courts. (See *Griffith Co.* v. *San Diego Col. for Women* (1955) 45 Cal.2d 501, 516 [289 P.2d 476, 47 A.L.R.2d 1349].)

■ The parties stipulated to the issues before the arbitrator and further stipulated if the arbitrator found a violation of the bargaining agreement he should determine "the appropriate remedy." The only limitation on the remedy was that if he found in favor of the union, "[he] should not make any determination on monetary damage." The arbitrator found SCRTD violated

sections 1 and 2 of article 51 of the agreement. As a remedy for the violation of section 2, the arbitrator held SCRTD's consent to transfer of assets "should be withdrawn." As to the violation of section 1, the arbitrator ordered the parties to attempt to resolve the question of remedy and retained jurisdiction to reopen the matter if the parties were unable to resolve the matter.

The stipulation of submission only precluded the arbitrator from awarding monetary damages. Thus, it is assumed the arbitrator had the power to order any other remedy not inconsistent with the collective bargaining agreement. (*Bellflower Education Assn.* v. *Bellflower Unified School Dist.* (1991) 228 Cal.App.3d 805, 812 [279 Cal.Rptr. 179]; *Tate* v. *Saratoga Savings & Loan Assn.* (1989) 216 Cal.App.3d 843, 854 [265 Cal.Rptr. 440].) Because nothing in the agreement expressly prohibited the remedies imposed, their imposition by the arbitrator must be held proper. (*Grunwald-Marx, Inc.* v. *L.A. Joint Board* (1959) 52 Cal.2d 568, 589 [343 P.2d 23]; *Social Services Union* v. *Alameda County Training & Employment Bd.* (1989) 207 Cal.App.3d 1458, 1464 [255 Cal.Rptr. 746].)

III.  *Article 51, Section 2 of the Collective Bargaining Agreement Is Valid and Enforceable.*

The SCRTD argues article 51, section 2 of the collective bargaining agreement is illegal or against public policy.[2] Therefore, to the extent the arbitration award compels SCRTD's compliance with that provision, the award should be vacated or corrected. (*Black* v. *Cutter Laboratories, supra,* 43 Cal.2d at pp. 799-800.)

Under article 51, section 2, SCRTD must require, as a condition to the sale, transfer or other disposition of its assets, that the acquiring agency or company assume and observe all existing labor contracts between SCRTD and the union. It is undisputed SCRTD did not comply with this provision in transferring part of its transit system to Foothill.

The SCRTD contends article 51, section 2 is void and unenforceable because it violates, on its face or as applied, public policies promoting the settlement of litigation and prohibiting unreasonable restraints on alienation of property as well as SCRTD's inherent power to preserve its operations and provide an efficient transit system to the public. The SCRTD also argues

---

[2]Article 51, section 2 is quoted, *ante*, at page 421.

the contract provision violates provisions of the Public Utilities Code giving it the right to dispose of its own assets and to contract for services and constitutes an illegal prehire agreement and "hot cargo" clause. We consider these objections below.

### 1. *Article 51, Section 2, Does Not Violate Federal or State Labor Laws*

A prehire agreement is a collective bargaining agreement which recognizes the union as the exclusive bargaining representative of the employees when only a minority of the employees have authorized the union to represent their interests. (*National Marble Co.* v. *Bricklayers & Allied Craftsmen* (1986) 184 Cal.App.3d 1057, 1065 [229 Cal.Rptr. 653].) A "hot cargo" agreement prevents an employer from doing business with a third party whose employees have either chosen not to organize or to be represented by some other union. (See Handler, *Reforming the Antitrust Laws* (1982) 82 Colum. L.Rev. 1287, 1343.)

SCRTD's argument that article 51, section 2 of the collective bargaining agreement violates federal or state labor laws lacks merit. As a public corporation created by statute, SCRTD is a political subdivision of the state exempt from the National Labor Relations Act and the National Labor Management Relations Act. (*Logan* v. *Southern Cal. Rapid Transit Dist.* (1982) 136 Cal.App.3d 116, 128 [185 Cal.Rptr. 878].) Nor can it be seriously contended article 51, section 2 violates state law. Public Utilities Code section 30753 contains a similar provision requiring SCRTD to assume and observe all existing labor contracts in the case of acquisition by SCRTD of the assets or facilities of another public utility.[3]

Furthermore, there is no evidence in the record that article 51, section 2 of the collective bargaining agreement would operate, in effect, as a prehire or "hot cargo" clause with respect to Foothill.

---

[3]Section 30753, subdivision (a) of the Public Utilities Code provides:

"Whenever the district acquires existing facilities from a publicly or privately owned public utility, either in proceedings in eminent domain or otherwise, *the district shall assume and observe all existing labor contracts,* and to the extent necessary for operation of facilities acquired, all of the employees of such acquired public utility whose duties pertain to the facilities acquired, shall be appointed to comparable positions in the district without examination, subject to all the rights and benefits of this part, and these employees shall be given sick leave, seniority, pension and vacation credits in accordance with the records and labor agreements of the acquired public utility." (Italics added.)

### 2. *Article 51, Section 2, Does Not Violate SCRTD's Right to Dispose of Its Property or to Contract for Services*

■  Section 30600 of the Public Utilities Code provides in relevant part:

"The board may lease, sell, jointly develop, or otherwise dispose of any real or personal property within or without the district, when, in its judgment, it is for the best interests of the district so to do."

Nothing in this statute prevents the SCRTD from agreeing with the union on conditions to the disposal of assets. Furthermore, as we noted above, the conditions agreed to by SCRTD and the union are virtually identical to the conditions SCRTD would have to meet upon the acquisition of property from another company.

■  The SCRTD also claims article 51, section 2 of the collective bargaining agreement precludes it from receiving state funds under Public Utilities Code section 99314.5, subdivision (c).[4] On their face the two provisions are not inconsistent. Moreover, article 51, section 2 had been in effect since at least February 1985 and there was no evidence in the record it had ever resulted in SCRTD losing any state funds.

### 3. *Article 51, Section 2, Does Not Violate Public Policy*

■  We find no merit in SCRTD's claim article 51, section 2 of the collective bargaining agreement, as applied, violates public policy by interfering with settlement of litigation, restraining the alienation of property and interfering with SCRTD's management decisions. The argument that settlement of litigation with third parties justifies SCRTD's ignoring valid agreements with the union is simply untenable. We have previously disposed of the restraint on alienation argument. (See this page, *ante.*) Finally, the arbitrator found no evidence of an emergency situation obviating SCRTD's duty under the collective bargaining agreement. ■  This finding of fact is not reviewable by the courts. (*Lesser Towers, Inc.* v. *Roscoe-Ajax Constr.*

---

[4]Section 99314.5, subdivision (c) provides:

"The funds may be allocated to an operator for its operating cost only if the operator is not precluded, by any contract entered into on or after June 28, 1979, from employing part-time drivers or contracting with common carriers of persons operating under a franchise or license and if the operator is in compliance with Section 99268.1, 99268.2, 99268.3, 99268.4, 99268.5, or 99268.9, whichever is applicable to it. No person who was a full-time employee of an operator on June 28, 1979, shall have his or her employment terminated or his or her regular hours of employment, excluding overtime, reduced by the operator as a result of it employing part-time drivers or contracting with those common carriers."

*Co.* (1969) 271 Cal.App.2d 675, 700-701 [77 Cal.Rptr. 100].) Thus, we do not decide whether such an emergency could excuse SCRTD's performance of the contract.

## DISPOSITION

The judgment is affirmed.

Lillie, P. J., and Woods (Fred), J., concurred.