Filed 9/7/21  Crooymans v. Givner CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| KATHRYN CROOYMANS et al., | B305916 |
| Plaintiffs and Appellants, | Los Angeles County |
| v. | Super. Ct. No. 19SMCP00467 |
| BRUCE GIVNER et al., | |
| Defendants and Appellants. | |

APPEALS from a judgment of the Superior Court of Los Angeles County, H. Jay Ford III, Judge.  Affirmed.

Fagelbaum & Heller, Philip Heller and Peter M. DelVecchio for Plaintiffs and Appellants.

Chamberlin & Keaster, Robert W. Keaster and Allan J. Favish for Defendants and Appellants.

————————

Kathryn Crooymans and David King (the King children), in their capacities as executors of their late father's estate, filed an arbitration claim against their father's tax planning attorneys, Bruce Givner and Givner & Kaye (collectively, Givner), alleging Givner committed legal malpractice by advising their father to purchase a private annuity less than a year before his death. The King children also asserted the claim in their capacities as co-trustees of the Preston and Merle King Trust (the Trust), alleging Givner failed to advise them about the defensibility of their father's estate plan and instead persuaded them to sign documents that effectively rescinded the private annuity, resulting in substantial tax liability. The arbitrator found Givner liable on both theories and awarded the King children damages "both in their individual and Trust and Estate representative capacities," as well as prevailing party attorney fees and costs. The arbitrator later vacated the award and issued a new final award increasing the attorney fee and cost amounts based on what the arbitrator said were incorrect "calculations."

Givner appeals the trial court's judgment confirming the arbitration award. He contends the award should have been vacated because the arbitrator exceeded his powers by failing to issue a "reasoned Award" as the arbitration provider's rules required. We conclude the court correctly denied Givner's petition to vacate.

In their cross-appeal from the judgment, the King children challenge the trial court's correction of the attorney fee and cost award. The court determined that, in the absence of an evident miscalculation, the arbitrator was not authorized to correct the final award. We conclude the court correctly applied the controlling law and properly corrected the award to reflect the

2

amount of attorney fees and costs provided in the arbitrator's original final award.

We affirm.

**FACTS AND PROCEDURAL BACKGROUND**

We draw the facts from the findings set forth in the final arbitration award, which we assume are true for purposes of this appeal. (See *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 11 (*Moncharsh*) ["[A] court may not review the sufficiency of the evidence supporting an arbitrator's award."].)

1. ***Factual Background***

For over 30 years, until his death in 2013, Preston King was the manager and full owner of BIG Enterprises, Inc., a successful manufacturer of parking lot "boothettes." In the mid-1980's, King formed a personal and professional relationship with Bruce Givner, an estate and tax planning attorney who held himself out as an expert on an aggressive estate tax reduction strategy known as a private annuity. In June 2007, King entered into an engagement agreement with Givner for tax planning legal representation.

In 2012, around the same time King was in negotiations to sell BIG Enterprises for over $20 million, he learned he had Stage IV non-small cell lung cancer—a diagnosis that he communicated to his tax planning attorney. In August 2012, King stopped all sale negotiations for BIG Enterprises and, in the months that followed, Givner formulated an estate plan involving a part-gift, part-sale of the company to a newly formed trust for King's children. Givner proposed a private annuity as a major component of the estate plan.

As part of the formation of the Preston King Children's Trust (the Children's Trust), King was to sell 142.105 shares of

BIG Enterprises to the Children's Trust in exchange for a private annuity with an effective date of December 31, 2012. Consistent with his client's desire to avoid estate taxes to the extent legally possible, Givner advised King to purchase the private annuity. Givner, however, failed to inform King that the private annuity would fail for tax-saving purposes if King were to die within one year. Givner also failed to propose other tax-saving techniques that would have provided post-death economic benefits to King's estate.

On May 3, 2013, Preston King succumbed to his cancer and died. That month, the King children, in their capacities as co-trustees of the Trust, retained Givner to provide comprehensive legal services regarding, among other things, estate tax and asset transfer issues.[1] However, Givner did not advise the King children about the defensibility of their father's estate plan. Instead, he persuaded them to sign documents that effectively rescinded the private annuity.

---

[1] Preston King's and the King children's engagement agreements with Givner contained substantively similar arbitration clauses, requiring binding arbitration of "[a]ll non-fee disputes related to our agreement . . . before a retired California Superior Court judge," and emphasizing that by "agreeing to arbitrate *you are waiving a jury trial*." (Boldface omitted.) The arbitration clauses also specified that "[t]he prevailing party at the arbitration shall be entitled to attorneys' fees, expenses of litigation and/or arbitration, including expert witnesses, and costs, related to obtaining and collecting any judgment and/or arbitration award, and any other relief to which that party may be entitled."

## 2. *Arbitration Proceedings*

In 2018, the King children filed an arbitration claim against Givner in their capacities as the executors of their late father's estate and the co-trustees of the Trust. They alleged Givner breached the standard of professional care owed to Preston King and the Trust by failing to provide proper and effective estate planning representation with the consequence that substantial estate taxes were incurred.

After several days of hearings, on April 25, 2019, the arbitrator issued a final award in favor of the King children, awarding them $654,800 "both on their own behalves and in their capacities as Co-Trustees" of the Trust. The arbitrator found Givner had "actual knowledge of the terminal nature of Mr. King's condition well before the end of 2012" and, on account of that knowledge, Givner "owed a duty to his Client, Preston King[,] to advise him that alternative tax-savings techniques were not only available (and given his dire medical situation, much more appropriate to the circumstances) so as to save his Estate significant taxes." The arbitrator found Givner "breached that duty both by putting Mr. King into an inappropriate Private Annuity and in failing to advise him as to other tax-saving options." Had Givner properly advised King, the arbitrator concluded "Preston King's Estate would have achieved a tax savings of $654,800."

On May 9, 2019, Givner filed a "Motion for Clarification Regarding the Final Arbitration Award," seeking "clarification of the proper capacity in which the Claimants were awarded damages in this matter." The motion emphasized the King children "did not pursue any claims in the arbitration in their individual capacities" and asserted the $654,800 award related

entirely to legal services that Givner rendered to Preston King before his death. Givner also argued the award did not comply with the arbitration provider's governing rules, specifically Rule 34(c) of the ADR Services, Inc. Arbitration Rules (ADR Rules), which required a "written, reasoned Award enumerating the disposition of each claim and the relief, if any, as to each claim." Givner insisted clarification of the capacity issue was key to his statute of limitations defense, which, he maintained, the arbitrator also failed to address in the award.

On May 10, 2019, the King children filed a motion for attorney fees and arbitration expenses, with a supporting declaration by their lead attorney Philip Heller, requesting an award of fees and costs totaling $2,733,866 (the initial Heller declaration).

On May 17, 2019, the King children filed a motion to strike Givner's motion for clarification and, on May 31, 2019, they filed an opposition to the motion for clarification.

On June 20, 2019, the Arbitrator issued a corrected final arbitration award, denying the King children's motion to strike and granting Givner's motion for clarification. The arbitrator concluded Givner was entitled to have the arbitrator "set forth with specificity the nature and extent of [his] determinations." The corrected award explained:

> "Though not addressed in the earlier Award, this Arbitrator finds that [Givner] committed professional negligence not only in [his] mishandling of the private annuity, which Mr. Givner counseled and advised Preston King to obtain[,] but in breaching those professional duties owed to [the King children] following

6

their Father's death. . . . [¶] Based thereupon this Award is intended to be in favor of [the King children] individually and in their representative capacities as Trustees and Executors acting on behalf of their Father's Estate and Trust."

On July 24, 2019, the King children filed an amended and supplemental declaration of Philip Heller in support of their motion for attorney fees and costs (the supplemental Heller declaration). According to Heller, as of the date of his declaration, the King children had incurred fees and costs totaling $3,197,876, including additional attorney fees incurred in connection with the motion for clarification and motion to strike.

On August 21, 2019, the arbitrator issued an updated final award, finding the King children were the prevailing party on the claim and awarding them attorney fees and costs totaling $1,738,292.10. Heller's initial and supplemental declarations were among the documents the arbitrator said he considered in rendering the award.

On August 27, 2019, the King children filed a motion to correct the arbitration award with respect to the amount of attorney fees and costs. The motion suggested the arbitrator may have accidently used Heller's initial declaration to calculate the attorney fee and cost awards instead of the updated figures stated in Heller's supplemental declaration. With respect to costs, the King children noted the award omitted amounts for certain expenses and awarded only the amounts set forth in the initial Heller declaration for others. This, in the King children's words, led them to "respectfully assume that the

7

omission of post-April 30, 2019 . . . expenses was an inadvertent computational error."[2]

Likewise, the King children "respectfully assume[d]" the arbitrator "inadvertent[ly]" used the initial Heller declaration in calculating the attorney fee award. They explained that, by dividing the dollar amounts awarded for each attorney's work by the attorney's hours stated in the initial Heller declaration, they had deduced that the arbitrator reduced the hourly rates requested for each attorney, but gave them credit for all the attorney's hours stated in the initial declaration.[3]

The King children's motion requested a new award "correcting" these supposed errors by including the omitted expenses and applying the reduced rates to the total hours stated in Heller's supplemental declaration, resulting in a total award of $2,084,378.91 for attorney fees and costs.

On September 17, 2019, the arbitrator issued another corrected final award, explaining:

"Upon the Arbitrator's further review of this Matter and his Award of August 21, 2019,

---

[2] The King children also noted the arbitrator omitted $7,500 paid to one of their experts when calculating the "aggregate sum" of expert witness fees. Givner did not dispute that the arbitrator had authority to correct this evident computational error.

[3] For example, by dividing the dollar amount awarded for Heller's work by his total number of hours as stated in his initial declaration, the King children deduced that the arbitrator assigned Heller an hourly rate of $600 (reduced from the $875–$950 rate requested), then applied that rate to the total hours stated in his initial declaration (812.1 hours) to yield an award of $487,260 for Heller's fees.

8

it seems clear, regretfully, that the fee and cost calculations set forth therein were incorrect in the following two respects: [¶] 1) An incorrect calculation of 'Total Expert Fees' through the omission of $7,500 paid to John Thompson; and [¶] 2) A reliance on Philip Heller's Fee/Cost Declaration filed on May 10, 2019 rather than Mr. Heller's Supplemental Fee/Cost Declaration filed on July 24, 2019."

Correcting for these stated errors, the arbitrator awarded the King children a total of $2,025,485.91 for attorney fees and costs.[4]

### 3.   *Trial Court Proceedings*

On September 30, 2019, the King children filed their petition to confirm the arbitration award.

Givner opposed the petition to confirm and filed his own petition to vacate or correct the arbitration award under Code of Civil Procedure sections 1286.2 and 1286.6.[5] He argued the award "should be vacated because the arbitrator failed to provide a reasoned decision as required by Rule 34c of the ADR Services, Inc. Arbitration Rules." In the alternative, Givner argued the award should be corrected to reflect the amount of attorney fees and costs specified in the August 21, 2019 award because "the arbitrator exceeded his authority . . . by amending his prior Final Arbitration Award . . . to add an additional $287,193.81 in attorneys' fees and costs." (Boldface omitted.)

---

[4]    The King children's motion to correct included an additional request of $58,893 for unspecified "expenses advanced to Claimants by their counsel" that the arbitrator apparently did not include in the new award.

[5]    Statutory references are to the Code of Civil Procedure.

The trial court denied Givner's petition to vacate, but granted the petition to correct the arbitration award. Consistent with the court's order, the King children filed a proposed judgment confirming the arbitration award, as corrected, and adjudging that "Petitioners Kathryn Crooymans and David King recover from Respondents Bruce Givner and Givner & Kaye, P.C."

Givner objected to the proposed judgment to the extent it purported to award the King children damages in their individual capacities as provided in the arbitration award. Because the King children did not bring an arbitration claim in their individual capacities, Givner argued the arbitrator lacked authority to award them damages in that capacity.[6]

---

[6] On appeal, Givner also argues the award should have been vacated because the arbitrator exceeded his powers by awarding the King children damages in their individual capacity—an argument he raised for the first time in his objection to the proposed judgment. Unlike the subject matter jurisdiction of a court, parties confer jurisdiction on an arbitrator by their agreement, and a party can forfeit an objection that the arbitrator acted in excess of his or her powers by failing to file a petition to vacate the award on that ground. (See § 1286.4 ["The court may not vacate an award unless: [¶] (a) A petition or response requesting that the award be vacated has been duly served and filed."]; § 1286 ["[T]he court shall confirm the award as made . . . unless in accordance with this chapter it corrects the award and confirms it as corrected, vacates the award or dismisses the proceeding."]; § 1287.4 ["If an award is confirmed, judgment shall be entered in conformity therewith."]; *Abers v. Rohrs* (2013) 217 Cal.App.4th 1199, 1211 ["The trial court's power to vacate an arbitration award is governed by statute."]; cf. *Housing Group v. United Nat. Ins. Co.* (2001) 90 Cal.App.4th 1106, 1113 ["It is well settled that parties cannot confer subject

The trial court overruled Givner's objection and entered judgment in favor of the King children.[7]

---

matter jurisdiction upon the court by consent, waiver or estoppel."]; see also *Alexandrou v. Alexander* (1974) 37 Cal.App.3d 306, 315, fn. 4 [issue raised "for the first time in [appellant's] objections to the proposed judgment" was forfeited for appeal].)

*National Union Fire Ins. Co. v. Stites Prof. Law Corp.* (1991) 235 Cal.App.3d 1718 is inapposite. There, the issue was whether the respondent "could first raise the arbitrators' purported lack of subject matter jurisdiction *in the trial court*." (*Id.* at p. 1723, italics added.) The *National Union* court did not address the situation we confront here—namely, Givner's implied consent to the arbitrator's jurisdiction by failing to raise the issue in his petition to vacate, as required under section 1286.4. (Cf. *National Union,* at p. 1724 [recognizing trial court's "limited" power to set aside an arbitration award is " '[s]ubject to [s]ection 1286.4.' "]; see also *Environmental Barrier Co. v. Slurry Systems, Inc.* (7th Cir. 2008) 540 F.3d 598, 606–607 ["the right to a judicial determination of arbitrability is, like many rights, one that can be waived"].) Because Givner's petition to vacate was limited to the ground that the arbitrator failed to provide a reasoned decision, he forfeited any other potential ground to vacate the award.

Moreover, while the fact that the King children did not bring a claim in their individual capacities means the award could have been corrected "without affecting the merits of the decision upon *the controversy submitted*" (§ 1286.6, italics added), Givner has also forfeited that ground by failing to assert it in his petition to correct. (See § 1286.8 ["The court may not correct an award unless: [¶] (a) A petition or response requesting that the award be corrected has been duly served and filed."].)

[7] Because Givner forfeited the contention that the arbitrator exceeded his powers by awarding the King children damages in

11

## DISCUSSION

### 1. *Governing Law*

The California Arbitration Act (§ 1280 et seq.) "represents a comprehensive statutory scheme regulating private arbitration in this state." (*Moncharsh, supra,* 3 Cal.4th at p. 9.) "The statutes set forth procedures for the enforcement of agreements to arbitrate (. . . §§ 1281.2–1281.95), establish rules for the conduct of arbitration proceedings except as the parties otherwise agree (. . . §§ 1282–1284.2), describe the circumstances in which arbitrators' awards may be judicially vacated, corrected, confirmed, and enforced (. . . §§ 1285–1288.8), and specify where, when, and how court proceedings relating to arbitration matters shall occur (. . . §§ 1290–1294.2)." (*Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 830 (*Vandenberg*).)

Section 1285 provides: "Any party to an arbitration in which an award has been made may petition the court to confirm, correct or vacate the award." Section 1286 provides: "[T]he court shall confirm the award as made . . . unless in accordance with this chapter it corrects the award and confirms it as corrected, vacates the award or dismisses the proceedings." Under section 1286.2, subdivision (a)(4), "the court shall vacate the award if the court determines . . . [that the] arbitrators *exceeded their powers* and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted." (Italics added.)

their individual capacity (see fn. 6, *ante*), we deny his request to take judicial notice of the turnover motion the King children filed to aid in execution of the judgment. The motion is irrelevant to the legal issues in this appeal. (See *People v. Stoll* (1989) 49 Cal.3d 1136, 1144, fn. 5.)

12

The circumstances under which a court may vacate or correct a final arbitration award on the ground that the arbitrator "exceeded their powers" are strictly limited. Most significantly, an arbitrator does not exceed his or her powers when he or she renders a decision that is based on errors of fact or law. (*Moncharsh, supra,* 3 Cal.4th at p. 10; *Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 381 (*AMD*).)

"Limited judicial review is a well-understood feature of private arbitration, inherent in the nature of the arbitral forum as an informal, expeditious, and efficient alternative means of dispute resolution. By choosing private arbitration, the parties 'evince [their] intent to bypass the judicial system and thus avoid potential delays at the trial and appellate levels.' [Citation.] Judicial interference with the arbitrator's decision would thus defeat the very advantages the arbitral parties sought to achieve." (*Vandenberg, supra,* 21 Cal.4th at p. 831, quoting *Moncharsh, supra,* 3 Cal.4th. at p. 10.)

Thus, parties, "simply by agreeing to arbitrate, are deemed to accept limited judicial review by *implication*, particularly where their agreement specified that the award would be 'final' and 'binding' upon them. [Citation.] In effect, it is appropriate to insulate a private arbitral award from close judicial scrutiny because, given the inherent nature of arbitration, *'the parties have agreed that it be so.'* " (*Vandenberg, supra,* 21 Cal.4th at p. 831; *Moncharsh, supra,* 3 Cal.4th. at pp. 9–10.)

As our Supreme Court observed, "private arbitration is a process in which parties voluntarily trade the safeguards and formalities of court litigation for an expeditious, sometimes roughshod means of resolving their dispute. The traditional rule is that ' "[a]rbitrators, unless specifically required to act in

conformity with rules of law, may base their decision upon broad principles of justice and equity, and in doing so may expressly or impliedly reject a claim that a party might successfully have asserted in a judicial action." [Citations.] As early as 1852, [our high] court recognized that, "The arbitrators are not bound to award on principles of dry law, but may decide on principles of equity and good conscience, and make their award ex aequo et bono [according to what is just and good]." [Citation.] "As a consequence, . . . '[p]arties who stipulate in an agreement that controversies . . . shall be settled by arbitration, may expect not only to reap the advantages that flow from the use of that nontechnical, summary procedure, but also to find themselves bound by an award reached by paths neither marked nor traceable and not subject to judicial review.' " ' " (*Vandenberg, supra,* 21 Cal.4th at pp. 831–832, quoting *Moncharsh, supra,* 3 Cal.4th at pp. 10–11, italics omitted.)

The above principles must not be construed "to suggest an arbitrator's exercise of discretion in ordering relief is unrestricted or unreviewable. Such an extreme position enjoys no support in our statutes or cases." (*AMD, supra,* 9 Cal.4th at p. 375.) "The powers of an arbitrator derive from, and are limited by, the agreement to arbitrate," and awards "in excess of those powers may, under sections 1286.2 and 1286.6, be corrected or vacated by the court. Unless the parties 'have conferred upon the arbiter the unusual power of determining his own jurisdiction' [citation], the courts retain the ultimate authority to overturn awards as beyond the arbitrator's powers, whether for an unauthorized remedy or decision on an unsubmitted issue." (*Ibid.*)

However, what does follow from the considerations discussed above is that review of whether an arbitrator exceeded

14

his or her powers cannot be de novo. (*AMD, supra,* 9 Cal.4th at pp. 375–376.)[8] "To the contrary, an appropriately deferential review starts not from the beginning, but from the arbitrator's own *rational assessment* of his or her contractual powers and is dependent on (that is, rests on acceptance of) this and any other factual or legal determination made by the arbitrator. The principle of arbitral finality, the practical demands of deciding on an appropriate remedy for breach, and the prior holdings of [our Supreme Court] all dictate that arbitrators, unless expressly restricted by the agreement or the submission to arbitration, have substantial discretion to determine the scope of their contractual authority to fashion remedies, and that judicial review of their awards must be correspondingly narrow and deferential." (*Id.* at p. 376, italics added.)

With these principles in mind, we turn to the parties' challenges to the judgment confirming the arbitration award, as corrected.

**2.** ***The Arbitrator Did Not Exceed His Powers Under the ADR Rule Requiring a Reasoned Award***

An arbitrator derives his or her powers from the parties' arbitration agreement, including their agreement to the rules that will govern the arbitration. (*AMD, supra,* 9 Cal.4th at p. 375; *Greenspan v. LADT, LLC* (2010) 185 Cal.App.4th 1413, 1438 (*Greenspan*) ["the rules of a provider like JAMS may determine the scope of the arbitrator's powers"].)

---

[8] We review the trial court's order denying Givner's petition to vacate and granting Givner's petition to correct de novo—not the arbitrator's award. (*AMD, supra,* 9 Cal.4th at p. 376, fn 9.)

15

In this case, the parties' arbitration agreements did not specify what rules would govern the arbitration. (See fn. 1, *ante*.) However, in their arbitration claim the King children specified that the ADR Rules would govern and, in a declaration in support of Givner's petition to vacate the award, Givner's attorney asserted the arbitration was conducted under and subject to the ADR Rules. We therefore accept that the parties agreed the ADR Rules would define the scope of the arbitrator's powers in this case.

Givner contends the trial court should have vacated the arbitration award under section 1286.2, subdivision (a)(4) because the arbitrator exceeded his powers by failing to follow ADR Rule 34(c). The rule states in relevant part: "The Arbitrator is required to render a written, reasoned Award enumerating the disposition of each claim and the relief, if any, as to each claim." Givner contends the arbitrator's written award failed to satisfy the "reasoned" requirement with respect to three issues: (1) the allocation of damages between the King children's different capacities; (2) Givner's statute of limitations defense; and (3) the reasonable hourly rate and number of hours underlying the attorney fee award.

Consistent with the general principle of limited judicial review, deference must be given to the arbitrator's interpretation of the procedural rules that the parties have chosen to govern the arbitration. (See *Greenspan, supra,* 185 Cal.App.4th at p. 1451 [unless parties have agreed arbitrator's interpretation of provider rules may be judicially reviewed on the merits, the court must "defer to the arbitrator's interpretation and application of the Rules"]; cf. *Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1355, 1361, 1364–1365

16

& fn. 23.) As the *Greenspan* court explained: " '[A]rbitrators, comparatively more expert about the meaning of their own rule[s], are comparatively better able to interpret and to apply [them]. In the absence of any statement to the contrary in the arbitration agreement, it is reasonable to infer that the parties intended the agreement to reflect that understanding. . . . And for the law to assume an expectation that aligns (1) decisionmaker with (2) comparative expertise will help better to secure a fair and expeditious resolution of the underlying controversy—a goal of arbitration systems and judicial systems alike.' " (*Greenspan,* at p. 1452, quoting *Howsam v. Dean Witter Reynolds, Inc.* (2002) 537 U.S. 79, 85.)

In this case, the principle of deference to the arbitrator's interpretation of the meaning and scope of the arbitration provider's rules is especially applicable to ADR Rule 34(c). Here, as discussed, the parties' arbitration agreements did not specify that a "reasoned" award would be required and, as Givner acknowledges, the ADR Rules do not define the phrase "written, reasoned Award." All the parties' arbitration agreements required was that non-fee disputes would "be subject to binding arbitration in L.A., before a retired California Superior Court judge" and that judgment on the arbitrator's award would "be final and may be entered in any competent court." Thus, while we cannot conclusively say the parties had a mutual understanding about the meaning of the phrase "written, reasoned Award" when they agreed to use the ADR Rules, we can reasonably infer they intended to have a retired California Superior Court judge, like their arbitrator in this case, resolve all procedural disputes that arose in the arbitration,

17

including those implicating the interpretation of the ADR Rules. (See *Greenspan, supra,* 185 Cal.App.4th at pp. 1451–1452.)

Applying the principle of deference, our courts "have employed two formulas to determine whether an arbitrator's award exceeded his or her powers. The courts have asked whether the award rests on a 'completely irrational' construction of the contract" (or, in this case, the arbitration rules), or "whether [the award] amounts to an 'arbitrary remaking' of the contract." (*AMD, supra,* 9 Cal.4th at p. 376.) In other cases, the courts have combined these tests into a single formula that holds "a decision exceeds the arbitrator's powers only if it is so utterly irrational that it amounts to an arbitrary remaking of the contract between the parties." (*Southern Cal. Rapid Transit Dist. v. United Transportation Union* (1992) 5 Cal.App.4th 416, 423 (*SCRTD*); *Paramount Unified School Dist. v. Teachers Assn. of Paramount* (1994) 26 Cal.App.4th 1371, 1381; cf. *AMD,* at p. 377.)[9]

---

[9] As our Supreme Court noted in *AMD*, at least one Court of Appeal has questioned whether this " 'completely irrational' " test is sufficiently deferential to the arbitrator's decision post-*Moncharsh*. (*AMD, supra,* 9 Cal.4th at p. 377, fn. 10, citing *Hall v. Superior Court* (1993) 18 Cal.App.4th 427, 434.) Because the *AMD* case involved an arbitrator's choice of remedies, rather than the interpretation of the parties' agreement, the high court did not decide whether an arbitrator's interpretation of a contract is subject to review for " 'irrationality' " or " 'arbitrariness.' " (*AMD,* at p. 377, fn. 10.) The *AMD* court reiterated only that "an award generally may not be vacated or corrected, under California law, for errors of fact or law." (*Ibid.*) Because Givner's argument concerns the arbitrator's construction of the ADR Rules, we believe the completely irrational formulation is a "[u]seful" test in this case. (*Id.* at p. 377.) In any event, were we to apply

18

The arbitrator did not state how he interpreted the directive to provide a "written, reasoned Award enumerating the disposition of each claim and the relief, if any, as to each claim" in ADR Rule 34(c). We must nevertheless presume that the award the arbitrator prepared satisfied the requirement, as he construed it. (See *City of Oakland v. United Public Employees* (1986) 179 Cal.App.3d 356, 364 ["Every intendment of validity must be given the award and doubts must be resolved in its favor."].) Thus, we can hold the arbitrator exceeded his powers under ADR Rule 34(c) only if the award implies a construction of the reasoned award requirement that is "so utterly irrational that it amounts to an arbitrary remaking" of the rules the parties agreed to have govern their arbitration. (*SCRTD, supra,* 5 Cal.App.4th at p. 423; *AMD, supra,* 9 Cal.4th at pp. 376–377.)

In *Cat Charter, LLC v. Schurtenberger* (11th Cir. 2011) 646 F.3d 836 (*Cat Charter*), the Eleventh Circuit Court of Appeals considered whether an arbitration panel exceeded its powers because it purportedly failed to provide a " 'reasoned award' " as agreed to by the parties. (*Id.* at p. 839.) In reversing the district court's order vacating the award, the circuit court offered the following instructive analysis: "Determining whether an award is reasoned first requires some context. Generally,

a formulation akin to the *AMD* test for whether an arbitrator exceeded his or her powers in awarding a particular item of relief —e.g., was the arbitrator's award rationally drawn from the ADR Rules as interpreted—the award here would unquestionably satisfy the standard. (See *ibid.* [where question is whether arbitrator has exceeded powers in awarding a particular item of relief, test is whether "the remedy chosen is rationally drawn from the contract as so interpreted" by the arbitrator].)

19

an arbitrator need not explain her decision; thus, in a typical arbitration where no specific form of award is requested, arbitrators may provide a 'standard award' and simply announce a result. [Citation.] At the other end of the spectrum, the Arbitration Rules allow parties to request that the arbitrators make 'findings of fact and conclusions of law,' a relatively exacting standard familiar to the federal courts. [Citation.] [¶] Logically, the varying forms of awards may be considered along a 'spectrum of increasingly reasoned awards,' with a 'standard award' requiring the least explanation and 'findings of fact and conclusions of law' requiring the most. [Citation.] In this light, therefore, a 'reasoned award is something short of findings and conclusions but more than a simple result.' " (*Id.* at p. 844.)

In *Rain CII Carbon, LLC v. ConocoPhillips Co.* (5th Cir. 2012) 674 F.3d 469 (*Rain*), the Fifth Circuit Court of Appeals likewise considered whether an arbitration award should have been vacated due to the arbitrator's alleged failure to provide a "reasoned award." (*Id.* at p. 474.) Contrasting the case with another where the parties had requested "findings of fact and conclusions of law, an exhaustive standard familiar to the courts" (*ibid.* [distinguishing *Western Employers Ins. Co. v. Jefferies & Co.* (9th Cir. 1992) 958 F.2d 258]), the *Rain* court observed the parties had agreed to only "a reasoned award, without further elaboration." (*Rain,* at p. 474.) That directive, according to *Cat Charter* and the circuit court's past holding in *Sarofim v. Trust Co. of the West* (5th Cir. 2006) 440 F.3d 213, 215, fn. 1, required only something "more than a simple result." (*Rain,* at p. 474.) Because it was "doubtful that the award is not more than a simple result," the circuit court held "vacatur is not appropriate and the award must be enforced." (*Ibid.*)

20

The reasoning in *Cat Charter* and *Rain* is sound and it comports with the principle of deference articulated in our state's precedents.  It logically follows from this reasoning that, however the arbitrator in this case construed the reasoned award requirement in ADR Rule 34(c), as long as his award offered an explanation that was "more than a simple result" (*Rain, supra,* 674 F.3d at p. 474), the arbitrator's interpretation of the requirement could not have been "so utterly irrational that it amount[ed] to an arbitrary remaking" of the rules (*SCRTD, supra,* 5 Cal.App.4th at p. 423).  The arbitrator gave more than a simple result in explaining the reasons for his disposition of the King children's claim.  On this record, we cannot conclude the arbitrator exceeded his powers under the parties' agreements or ADR Rule 34(c).  (*SCRTD,* at p. 423.)

The arbitrator's award, as supplemented in response to Givner's motion for clarification, gave the following reasons for the arbitrator's disposition of the King children's claim:

> "Respondents herein, Bruce Givner and Givner and Kaye breached the professional duty owed to Preston King in establishing Mr. King's Estate Plan.  More specifically, [due to] his actual knowledge of the terminal nature of Mr. King's condition well before the end of 2012, Bruce Givner owed a duty to his Client, Preston King[,] to advise him that alternative tax-savings techniques were not only available (and given his dire medical situation, much more appropriate to the circumstances) so as to save his Estate significant taxes.  He breached that duty both

21

by putting Mr. King into an inappropriate Private Annuity and in failing to advise him as to other tax-saving options.  Too, following Preston King's death[,] such professional duties, based upon the attorney/client relationship then existent, were owed to Mr. King's Children, Kathy Crooymans and David King, both in their individual and Trust and Estate representative capacities."

"Respondents committed professional negligence not only in their mishandling of the private annuity, which Mr. Givner counseled and advised Preston King to obtain[,] but in breaching those professional duties owed to Kathy Crooymans and David King following their Father's death.  Specifically, such breaches included a failure to communicate properly with Ms. Crooymans and Mr. King regarding the possibility of defending the private annuity; a failure to investigate and discuss with them the defensibility of the subject annuity; [and] his rescission of the annuity without either explaining alternative courses of action or discussing the economic consequences of such rescission."

"Based thereupon[,] this Award is intended to be in favor of Ms. Crooymans and Mr. King individually and in their representative capacities as Trustees

22

and Executors acting on behalf of their
Father's Estate and Trust."

Contrary to Givner's contention, the above explanation provides reasoning, beyond a simple result, for the arbitrator's allocation of damages or, more accurately, his decision not to allocate damages among the different capacities in which the King children asserted the claim. As the arbitrator explained, he determined Givner's professional duties, following Preston King's death, continued to be owed to the King children "both in their individual and Trust and Estate representative capacities." Because he construed the King children to have a right to relief jointly and severally with their father in their individual, trustee, and executor capacities, the arbitrator plainly concluded no allocation of damages was required. Whether this is a correct understanding of our state law regarding joinder or the rendering of a joint judgment is irrelevant. As stated in the parties' arbitration agreements, Givner contracted for an award that would "be final"—not one that was necessarily correct on the law. (See *Vandenberg, supra,* 21 Cal.4th at p. 831; *Moncharsh, supra,* 3 Cal.4th. at pp. 9–10.) All we are authorized to review is whether the arbitrator provided a "reasoned Award," as he reasonably interpreted that obligation. He did.

The same is true with respect to Givner's statute of limitations defense. In responding to Givner's specific charge that the award failed to address the statute of limitations issue, the arbitrator supplemented the award to explain that Givner's breach continued after Preston King's death insofar as Givner failed to communicate properly with the King children about defending the private annuity and, instead, persuaded them to rescind it. The reasonable implication of this explanation is

23

that the arbitrator concluded the statute of limitations was tolled during the period that Givner continued to represent the King children.  Again, whether this would be a sufficient reason to invoke tolling had the King children asserted their malpractice claim in court is not relevant.  The only matter subject to our review on Givner's claim of error is whether the arbitrator provided something more than a simple result that, in his reasonable interpretation, constituted a "reasoned Award enumerating the disposition of each claim."  He did.

Finally, we are not convinced that ADR Rule 34(c) applies to the arbitrator's calculation of attorney fees, and we certainly cannot say that it would be "utterly irrational" for the arbitrator to construe the details of a fee calculation to lie outside the directive.  (*SCRTD, supra,* 5 Cal.App.4th at p. 423).  By its terms, ADR Rule 34(c) applies to "the disposition of each *claim* and the relief, if any, as to each *claim*."  (Italics added.)  The ADR rules refer to a "claim" in various places, but nowhere do they purport to equate prevailing party attorney fees with a claim or with relief as to a claim.  (See, e.g., ADR Rule 6 [discussing notice of claims, counterclaims, and affirmative defenses]; ADR Rule 7 [discussing changes of claims]; ADR Rule 8 [discussing arbitrability of a claim].)

In any event, the arbitrator awarded attorney fees well below the amount the King children requested, and the amount of the award plainly is not subject to judicial review either for the sufficiency of the evidence supporting it or with respect to the arbitrator's assessment of the necessity or reasonableness of the services provided during the arbitration.  (See *Moncharsh, supra,* 3 Cal.4th at pp. 11–12; *Morris v. Zuckerman* (1968) 69 Cal.2d 686, 691 [" 'Neither the merits of the controversy . . . nor the

24

sufficiency of the evidence to support the arbitrator's award are matters for judicial review.' "].) Given the principle of deference and the arbitrator's implicit determination that ADR Rule 34(c) does not apply to the calculation of prevailing party attorney fees, we cannot order vacatur of the arbitration award simply because the arbitrator declined to explain why he awarded the King children substantially less attorney fees than they requested.

3. ***The Arbitrator Exceeded His Authority to Correct a Final Arbitration Award***

The trial court concluded the arbitrator had no power to revise the final award of August 21, 2019 to include the additional attorney fees the King children suggested had been omitted in their motion to correct. In their cross-appeal, the King children argue the arbitrator corrected an evident miscalculation appearing on the face of the August 21, 2019 final award and the trial court thus erred in ruling the arbitrator exceeded his authority. We conclude the court correctly applied the controlling law.

As we have discussed, to enforce the finality of arbitration, the arbitration statutes generally minimize judicial intervention. (*Moncharsh, supra,* 3 Cal.4th. at p. 10; *Cooper v. Lavely & Singer Professional Corp.* (2014) 230 Cal.App.4th 1, 11 (*Cooper*).) Critically, this principle of limited intervention extends as well to the arbitrator once a final award has been rendered. "The arbitrator, like the court on review, is limited by statute in correcting an award." (*Severtson v. Williams Construction Co.* (1985) 173 Cal.App.3d 86, 93 (*Severtson*).)

Section 1284 specifies and "narrowly circumscribes" the powers of an arbitrator to correct a final award.[10] (*Cooper, supra,* 230 Cal.App.4th at p. 12; *Elliott & Ten Eyck Partnership v. City of Long Beach* (1997) 57 Cal.App.4th 495, 501–502 (*Elliott & Ten Eyck*).) Under section 1284, the arbitrator, "upon written application of a party to the arbitration, may correct the award upon any of the grounds set forth in subdivisions (a) and (c) of Section 1286.6 not later than 30 days after service of a signed copy of the award on the applicant." Subdivisions (a) and (c) of section 1286.6 authorize the trial court to correct an award if it determines that "(a) There was an evident miscalculation of figures or an evident mistake in the description of any person, thing or property referred to in the award;" or "(c) The award is imperfect in a matter of form, not affecting the merits of the controversy."

---

[10] A final award is an award that resolves all the issues the parties have submitted to the arbitrator. (*Cooper, supra,* 230 Cal.App.4th at p. 12; see § 1283.4 [arbitrators must issue awards that "include a determination of all the questions submitted"].) It is undisputed that the award the arbitrator issued on August 21, 2019 was a final award.

The King children assert the purported correction was authorized under ADR Rule 34(e), which permits correction of "any computational, typographical or other error in an Award," as long as the arbitrator does not "reconsider the merits of any claim already decided." However, they do not contend the rule displaces the limitations imposed under section 1284 or otherwise empowers the arbitrator to correct an award in circumstances that section 1284 does not permit. We therefore confine our analysis to the governing statute.

As the court explained in *Elliott & Ten Eyck*: "It is, apparently, an ancient rule that 'when arbitrators have published their award by delivering it to the parties as the award, that it is not the subject of revision or correction by them, and that any alteration without the consent of the parties will vitiate it.' . . . [¶] . . . Section 1284 codifies the rule against changes in the award. Some amelioration from the stringency of the rule is provided in [the] referenced provision of section 1286.6, which allows correction of an award, but in very narrow terms." (*Elliott & Ten Eyck, supra,* 57 Cal.App.4th at pp. 501–502, fn. omitted; *Cooper, supra,* 230 Cal.App.4th at pp. 13–14.)

Under the statutory grounds for correction recognized in section 1284, "[t]he arbitrator may not reconsider the merits of the original award and make a new award under the guise of correction of the award." (*Landis v. Pinkertons, Inc.* (2004) 122 Cal.App.4th 985, 992.) "The statutory grounds authorize the arbitrator to correct an award after it has been issued to the parties only regarding 'evident miscalculations of figures or descriptions of persons, things or property [citation] and nonsubstantive matters of form that do not affect the merits of the controversy.' " (*Cooper, supra,* 230 Cal.App.4th at p. 14, quoting *Century City Medical Plaza v. Sperling, Isaacs & Eisenberg* (2001) 86 Cal.App.4th 865, 877.)

The King children contend the arbitrator acted within his authority under section 1284 to correct an "evident miscalculation of figures" (§ 1286.6, subd. (a)) in the August 21, 2019 final award. In *Severtson*, the court held there are "two elements" to satisfy this condition for correction: "There must be a miscalculation; and, the miscalculation must be 'evident.' " (*Severtson, supra,* 173 Cal.App.3d at p. 93.) A miscalculation is

27

a " 'palpable error in computation.' " (*Id.* at p. 94.)  To be evident, a miscalculation "must appear *on the face* of the award [citation] or be so readily apparent from the documentation in the case that explanation by proofs is not necessary."  (*Ibid.*)  "[E]vident" as used in section 1286.6 means something that " 'is apparent by an examination of the [document], needing no evidence to make it more clear' "; it is a miscalculation that " 'is open, palpable[,] . . . incontrovertible[,] . . . visible, plain, [and] obvious to the understanding from an examination of the . . . document; or, at the most, only requiring a mathematical calculation to demonstrate it.' "  (*Id.* at p. 93.)

The King children maintain the August 21, 2019 final award "fit squarely" within the *Severtson* court's "articulation of the standard for correction of calculation errors."  They retell their process for uncovering the purported miscalculation as follows:

> "Upon review of [the arbitrator's] August 21, 2019 Award, it immediately became apparent that he had used the wrong declaration because:  (1) the ADR fees and Veritext expenses awarded were in the exact amounts stated in the [initial Heller declaration]; and (2) there was no indication anywhere in the award that [the arbitrator] intended to deny recovery for fees and costs incurred during the period between the dates of the two declarations.  The August 21, 2019 Award's award of attorneys' fees did not reflect the figures in either the [initial Heller declaration] or the [supplemental Heller

28

declaration], so the obvious next step in figuring out what had happened was to divide the amount of the fees awarded for each attorney by the number of hours that attorney had worked."

Because the process of dividing the amount of fees awarded for each attorney by the number of hours assigned to each attorney in the initial Heller declaration yielded "round hourly rates for each . . . attorney[ ]," the King children say "[i]t could not have been more obvious that, in calculating his attorneys' fee award, [the arbitrator] had simply reduced the hourly rates sought for each attorney, but had not reduced the hours."  They go on to assert, "The odds against the arithmetic exercise described above somehow coincidentally resulting in such neat, round hourly rates for each of four attorneys, especially when all of the hours figures involved decimals, was astronomical, removing the calculations far from the realm of 'assumption.' "

Arithmetic probabilities aside, what is clear from the King children's retelling of their process for uncovering the arbitrator's supposed mistake is that they were not confronted with an "evident miscalculation of figures" appearing on the face of the final arbitration award.  By their own admission, what the King children saw when they received the August 21, 2019 final award were figures for "the ADR fees and Veritext expenses" that were "in the exact amounts stated" in the initial Heller declaration.  All that was possibly *evident* from these figures was that the arbitrator had used the initial Heller declaration as the basis for awarding these items of costs; the notion that this was a mistake, let alone a *miscalculation*, was supposition that could be confirmed only by bringing a

speculative motion for correction to inquire about the arbitrator's intention.  But it is precisely this type of speculative motion, which delays the swift and inexpensive finality that parties bargain for when they contract for arbitration, that the *evident* miscalculation requirement is meant to prevent.  (See *William B. Logan & Associates v. Monogram Precision Industries, Inc.* (1960) 184 Cal.App.2d 12, 17 [when there is no way to know from the face of the award "why the arbitrator arrived at the particular amount," "a miscalculation is suppositional rather than evident" and motion for correction is improper under the arbitration statutes].)

The King children's reliance on supposition is even more apparent with respect to the attorney fee award.  As the King children admit, the attorney fee award was less than the figures in either the initial Heller declaration or the supplemental declaration.  Thus, they say they were prompted to reconstruct the arbitrator's process for calculating the fee award because, in their minds, "there was no indication anywhere in the award that [the arbitrator] intended to deny recovery for fees and costs incurred during the period between the dates of the two declarations."  But that supposition merely begged the question. Accepting their characterization of the "astronomical" odds against coincidentally arriving at "such neat, round hourly rates for each of four attorneys," all the King children's "arithmetic exercise" showed was that the arbitrator had in fact awarded attorney fees only for the work performed up to the date of Heller's initial declaration (albeit at reduced rates as well). It plainly was within the arbitrator's authority to deny recovery for fees incurred during the arbitration, and the King children have never disputed as much.  (See *Moshonov v. Walsh* (2000)

22 Cal.4th 771, 774–775.) They nonetheless *assumed* the conclusion that needed to be evident *before* they brought their motion to correct—namely, that the arbitrator made a miscalculation in denying certain fees—when the opposite conclusion appeared to be just as, if not more likely from the face of the final award.[11]

*Lopes v. Millsap* (1992) 6 Cal.App.4th 1679, the case upon which the King children principally rely, brings the problem with their speculative motion into sharper focus. In *Lopes*, the parties agreed to sell a parcel of real property and divide the net proceeds as determined by an arbitrator. (*Id*. at pp. 1682–1683.) The arbitrator awarded the appellant $93,199.24 and the two respondents $25,056.05 each from the sale proceeds. (*Id*. at p. 1683.) Upon review of the award, the respondents' attorney sent a letter to the arbitrator noting "the 'amounts' to be divided by the award 'only equal[ed] the current balance contained in [the appellant's attorney's] trust account, as opposed to the true proceeds of sale, which [were] over $30,000.00 more.' " (*Ibid*.) After reviewing the letter, the arbitrator corrected his " 'computation error' " which " 'did not accurately reflect the division of the sale proceeds' [that] he 'intended.' " (*Id.*

---

[11] As discussed, in his August 21, 2019 final award, the arbitrator denied the King children's motion to strike and granted Givner's motion for clarification, ruling Givner was "entitled to have [the arbitrator] set forth with specificity the nature and extent of those determinations." Thus, contrary to the King children's assertion, there was some indication in the final award that the arbitrator may have intended to deny the attorney fees and costs set forth in the supplemental Heller declaration, which contained the updated figures related to the motion for clarification and motion to strike.

at p. 1684.)  The trial court confirmed the award as corrected and the reviewing court affirmed.  (*Id.* at pp. 1684–1687.)  In view of the over $30,000 shortfall, there was no question from the face of the award that the arbitrator had made some "error in calculations" when dividing the net sale proceeds.  (*Id.* at p. 1686.)  That was not the case here, where the face of the August 21, 2019 final award plainly admitted of the possibility that the arbitrator had simply denied the recovery of certain fees based on legal or factual determinations.

Because the arbitrator confirmed that he did in fact make a mistake by relying on the initial Heller declaration, the King children argue nothing was improper about their motion to correct.  Again, this argument, in effect, begs the question.  The motion to correct and subsequent amendment to the arbitration award was proper only if a miscalculation was *evident* on the face of the final award.  The fact that the arbitrator later confirmed what was *not* evident before he provided confirmation does not retroactively justify the motion to correct.  Regardless of whether the arbitrator failed to award the additional attorney fees set forth in the supplemental Heller declaration by "mistake, ' ". . . the omission was in effect a disallowance of those items." ' " (*Severtson, supra,* 173 Cal.App.3d at p. 95, quoting *Sapp v. Barenfeld* (1949) 34 Cal.2d 515, 523–524.)

The King children will no doubt be dissatisfied with this outcome, seeing it as an elevation of form over substance.  And, to be sure, reviewing courts have used a similar justification to recognize a nonstatutory basis for correction where an arbitrator amends a final award to include rulings on an omitted issue. (See *A.M. Classic Construction, Inc. v. Tri-Build Development Co.*

(1999) 70 Cal.App.4th 1470, 1478 (*A.M. Classic*).)[12]  However, under the circumstances we confront here, arguments about what constitutes "form" and what constitutes "substance" do not justify a rewriting of the governing arbitration statutes.  While the policy of " 'indulg[ing] every reasonable intendment to give effect to arbitration proceedings' " may warrant a departure from "ancient" strictures in some circumstances (*ibid.*), that policy necessarily must yield to the fundamental directive to give effect to the parties' "expectation of finality" when those demands come into conflict, as they do here.  (*Moncharsh, supra,* 3 Cal.4th at p. 10.)

There was no "evident miscalculation of figures" in the final arbitration award with respect to the attorney fees and certain cost items, and, as such, the King children had no warrant to bring a motion to correct these items (even if their supposition

_____

[12]    In adopting the nonstatutory amendment doctrine regarding omitted issues, the *A.M. Classic* court explained: "It has been suggested that an ancient rule requires the award to be vacated under the circumstances we face here.  [Citation.] The cases holding that an incomplete award is a nullity and must be vacated were generally decided before California's Arbitration Act was enacted.  They pre-date public policy expressions of the Supreme Court and numerous appellate courts favoring arbitration and instructing us to 'indulge every reasonable intendment to give effect to arbitration proceedings.'  [Citations.] Moreover, it would be irrational to discard all the time and money spent by the parties where an arbitration award is inadvertently incomplete in one respect and where the oversight can be corrected without substantial prejudice to the legitimate interests of a party.  To deny arbitrators the authority to complete their task under such circumstances elevates form over substance."  (*A.M. Classic, supra,* 70 Cal.App.4th at p. 1478.)

33

about the arbitrator's mistake ultimately proved correct). Enforcing the rules limiting an arbitrator's power to correct a final award, *as the Legislature has prescribed them*, will discourage future litigants from bringing motions to correct unless a miscalculation is in fact evident. This, in turn, will better guarantee all parties obtain the swift, relatively inexpensive final resolution of their disputes that they bargain for when they contract for arbitration. (See *Moncharsh, supra,* 3 Cal.4th. at p. 10; *Vandenberg, supra,* 21 Cal.4th at p. 831.)

## DISPOSITION

The judgment is affirmed.  The parties shall bear their own costs.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EGERTON, J.

We concur:



LAVIN, Acting P. J.



KALRA, J.*

---